Crowns vs. Forest Land Co.

BARDEEN, J., took no part.

CROWNS vs. FOREST LAND COMPANY.

*November 4, 1898 — February 21, 1899.*

*Relief against judgment: Bill of review: Leave of court.*

| | |
|---|---|
| 102 | 97 |
| 103 | 137 |
| 102 | 97 |
| f106 | 284 |
| 102 | 97 |
| 111 | 1249 |
| 102 | 97 |
| 114 | 253 |

1. The Code was intended to be a complete system in itself, and a complete substitute for the old forms of action and methods of practice. Under it the old bill of review does not exist, but relief against a judgment obtained against a party through his mistake, inadvertence, surprise, or excusable neglect may be granted on motion within one year after notice, or a motion for a new trial may be made on the ground of newly discovered evidence at any time within one year after verdict or finding; but if the discovery is not made within the year, there is no remedy unless the facts discovered show fraud or collusion, in which case relief may be obtained in a direct action.

2. No leave of court is necessary before commencing such an action.

MOTION for leave to file a bill of review. *Denied.*

In 1880, one Otto D. Bjorquist conveyed a tract of land to defendant, and took back a mortgage for $16,000, which was afterwards assigned to plaintiff. The mortgage was foreclosed, the property sold, and a judgment for deficiency

Crowns vs. Forest Land Co.

entered against defendant. An appeal from both judgments was taken to this court by the defendant, and the judgments were affirmed. [99 Wis. 103.] While these appeals were pending, the defendant made a motion in the superior court for leave to amend its answer, and set up new matters in the nature of a cross bill, bringing in new parties. After the judgments had been affirmed in this court, and the *remittitur* had been filed in the superior court, that court made an order vacating such judgments conditionally, and permitting such defense to be made. Upon appeal to this court, this order was reversed. [100 Wis. 554.] After the judgment of deficiency had been rendered, the plaintiff commenced a creditor's action, based thereon, against the defendant and its stockholders. While this action was pending, defendant claimed to have discovered facts with relation to the original transaction which rendered it fraudulent, and thereupon obtained leave from the superior court to set up the facts in the creditor's action and bring in new parties thereto. This action is now pending.

On November 9, 1898, the defendant filed a petition in this court, setting out the facts as above stated, and alleging the facts at length upon which it relies to show that the transactions with Bjorquist, and the judgments mentioned, are fraudulent and inequitable. It asks an order of this court granting leave to prosecute its cross bill or complaint in the creditors' action, or for leave to bring an action in equity against the parties, in the nature of a bill of review, to set aside the judgments heretofore mentioned.

For the motion there was a brief by *Nath. Pereles & Sons* and *Edwin S. Mack,* and oral argument by *C. F. Hunter.* They argued that a bill of review might be brought upon discovery of new facts which would change the merits of the claim, leave of court being first obtained. Story, Eq. Pl. §§ 412–415; Daniell, Ch. Pr. 1577, 1578; Freeman, Judgments, § 485; *Stowell v. Eldred,* 26 Wis. 504; *Barber v.*

Crowns vs. Forest Land Co.

*Rukeyser*, 39 Wis. 590; *Hiles v. Mosher*, 44 Wis. 601; *Nevil v. Clifford*, 55 Wis. 161, 163, 169; *Hooper v. Smith*, 74 Wis. 530; *Ketchum v. Breed*, 66 Wis. 85, 97, 99.

*W. J. Turner, contra.*

BARDEEN, J. The relief sought on this motion opens an inviting field. It is a singular circumstance that, after nearly a half century of practice under the Code, the question of practice here presented should have been left open and undetermined. True it is that, under some of the earlier decisions of the court, language has been used that would seem to justify the idea that the bill of review of the old practice is still a proper remedy under the Code. But when we come to consider the object and purpose of the new system; when we keep in view the fact that the new order was intended as a complete substitute·for the old; that the artificial foundation of the old system has been swept away, the incongruity of the idea becomes manifest. A recent discussion of the objects and purposes of the Code by Mr. Justice MARSHALL, in *Kollock v. Scribner*, 98 Wis. 104, gives emphasis to the situation. What he there said, and the authorities cited, pay tribute to the wisdom of the framers of the new system, and show most clearly the end sought to be attained.

A review of the cases decided in the early days of the Code makes manifest the fact that the judges and lawyers who practiced under the old system were very reluctant in yielding homage to the new. As justly remarked by Mr. Pomeroy, in his very able work on Code Remedies (§ 31): "The profession and the courts have been left to work their way in the dark, and the consequence has been an utter confusion and uncertainty, which have gone far to defeat the beneficial purposes of the reform, and to create a conviction in the minds of many very able lawyers and judges that the change was a positive evil." Their reluctance to conform

to the new system has given rise to much confusion and un-
certainty in practice, and this court can claim no immunity
from mistakes in that direction. The prime idea that must
be kept in mind is that the Code was intended to be a com-
plete system in itself, and a complete substitute for the old
forms of actions and methods of practice.

There is absolutely no reason for claiming that the old
bill of review exists under our present system. In the *Kol-
lock Case* Judge MARSHALL has demonstrated that the an-
cient cross bill, so potent for good under the equity practice,
has no existence under the Code; but the Code permits the
answer to be framed to cover all the purposes of the cross
bill which it displaces. Reference, we think, to the stat-
utes will show that remedies have been preserved therein,
or authorized thereby, fully adequate to meet the needs of
all parties litigant. The policy of the law is to put an end
to litigation. The Code, therefore, cut off and wiped out
many of the forms of procedure existing under the old prac-
tice, that had a tendency to delay or prolong litigation.
First, it abolished all distinction between actions at law and
suits in equity. Stats. 1898, sec. 2600. It said, further, that
the court should, in every stage of an action, disregard any
error or defect in the pleadings or proceedings which did
not affect the substantial rights of the adverse party, and
that no judgment should be reversed or affected by reason
of any such error or defect. Id. sec. 2829. The court was
further authorized, upon the trial, or at any other stage of
the action, before or after judgment, to amend pleadings
and processes, etc., to make them conform to the facts. Id.
sec. 2830. Within one year after notice, the court might,
in discretion, relieve a party from a judgment or other pro-
ceeding against him "through his mistake, inadvertence,
surprise or excusable neglect," and might supply omissions
when the party had failed to conform to the law, and permit
amendments to make the proceedings conformable thereto.

Id. sec. 2832.   The language of the section is broad, and has
received a liberal construction.   Under another statute a mo-
tion for a new trial upon newly discovered evidence could
be made at any time within one year after the verdict or
finding.   Id. sec. 2879.   And this seems to apply to what
are called equitable, as well as legal, actions.   *Carroll v.
More*, 30 Wis. 574; *McWilliams v. Bannister*, 42 Wis. 301;
*Smith v. Smith*, 51 Wis. 665.   Other provisions of the Code
might be mentioned, which tend to make it a harmonious
whole, and which afford an aggrieved litigant an opportu-
nity to secure relief and protect his rights as fully as under
the old practice.

Under the old equity practice, a bill of review, strictly so
called, could only be urged after a final decree.   Its purpose
was to reverse or modify a decree for error of law apparent
on the face of such decree, or on account of new facts dis-
covered since publication was passed in the original cause.
Since the adoption of the Code, no one has pretended that a
judgment could be reviewed by this proceeding for errors
on the face thereof.   The suitor has always been left to his
remedy either by motion, writ of error, or appeal.

The question of whether a bill of review will lie in this
state on the other ground stated has never been definitely
determined.   In the early case of *Parish v. Marvin*, 15 Wis.
247, the action was to reverse the judgment of another cir-
cuit court, and for a perpetual injunction.   The action was
considered to be in the nature of a bill of review, and Judge
Dixon says: "If proceedings in the nature of a bill of re-
view may still be taken, they must be had before the court
in which the judgment was rendered."   On the point that
one circuit court has no jurisdiction to open, review, set
aside, or reverse the judgment of another circuit, the decis-
ions are numerous and uniform.   *Fenske v. Kluender*, 61 Wis.
602; *Coon v. Seymour*, 71 Wis. 340; *Cardinal v. Eau Claire
L. Co.* 75 Wis. 404; *Stein v. Benedict*, 83 Wis. 603.

In the case of *Fenske v. Kluender* it is said that the action was in equity, and, had the plaintiff been a party to the judgment sought to be affected, the action would have been one to review and annul the judgment therein. The opinion reads: "If the plaintiff can maintain an action of this nature at all (a proposition not here decided), such an action must be governed by the same rules applicable to bills of review." The case was affirmed on the ground that the action was not commenced in the court which rendered the judgment sought to be reviewed, and because leave had not been obtained to commence the action, in analogy to the old practice. *Ketchum v. Breed*, 66 Wis. 85, was a case of a bill of review pure and simple. The right to maintain it was denied on the ground of the laches of the moving party, and it was said in the opinion that, because of that fact, it was unnecessary to determine whether the old remedy by bill of review had been abrogated or not.

Thus, it will be seen that, whenever the question has been presented, it was left without determination. In the cases cited, expressions are used speaking of bills of review and bills in the nature of a bill of review. In the old practice the distinction consisted in the fact of whether the decree had been enrolled or not. If the decree had been enrolled, the bill of review was proper. If the decree had not been enrolled, then a bill in the nature of a bill of review would lie, and was usually accompanied by a petition to rehear the original case. Story, Eq. Pl. §§ 421, 422. Under the latter head, and under the Code, the relief sought to be secured thereby is usually obtained by motion, as the judgment is within the control of the court and may be reviewed or modified at any time during the term.

It must be borne in mind that, under our system, remedies in a court of justice are divided into actions and special proceedings (Stats. 1898, sec. 2594); that actions are either civil or criminal (Id. sec. 2597); that all the old forms of ac-

tions have been abolished, and only one form of action is permissible, which is denominated a civil action (Id. sec. 2600); that the distinction between judgments and decrees no longer exists, and that the final conclusion of the court in an action is a judgment (Id. sec. 2882), and not a decree. The new procedure provides the manner in which these judgments can be attacked in the cases heretofore mentioned. It does not assume or attempt to divest the courts of the jurisdiction they formerly possessed to protect the rights of parties when fraud had intervened. It does say, however, that in this state there is but one form of action for the enforcement of private rights and the redress or prevention of private wrongs, which is a civil action. Cases have arisen, similar to the one set out in the petition, when alleged circumstances of fraud and collusion in the transaction upon which the judgment was based, or in obtaining the judgment itself, have come to light after the limitation had expired under which the party could move for a new trial. The aggrieved party is not without remedy. Courts of equity, under the old regime, had the power of control over the parties, and would prevent them from asserting rights based upon judgments tainted by fraud or covin. That power exists to-day, but it must be invoked and enforced in harmony with the true spirit and in accordance with the positive requirements of the new order. But the same obligation of vigilance and diligence on the part of suitors is yet recognized and enforced. A party seeking relief must be diligent and vigilant in asserting his rights, or go without day.

We have said that the true spirit of the law was to put an end to litigation. Stats. 1898, sec. 2879, limits the time within which a motion for a new trial may be made, on the ground of newly discovered evidence, to one year from the verdict or finding. But suppose, as in this case, the facts upon which the fraudulent character of the transactions re-

sulting in the judgment sought to be attacked depends were not discovered until the expiration of the year, is the party without remedy? While it may rightly be said that the ground upon which defendant seeks relief is newly discovered evidence, yet it is evidence showing fraud and collusion, concealed by the parties to it, and which, it is claimed, has resulted most harmfully to the defendant. This was a favorite subject of relief in equity.

There can be no question of the jurisdiction of a court of chancery to relieve against fraud. In *Stowell v. Eldred*, 26 Wis. 504, we read that "chancery will relieve against a judgment at law, on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the facts in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense by fraud or accident, or the acts of the opposite party, unmixed with negligence or fault on his part." The same proposition is repeated in *Barber v. Rukeyser*, 39 Wis. 590; and *Hiles v. Mosher*, 44 Wis. 601. Suits to restrain the execution or enforcement of judgments upon equitable grounds have been entertained by this court. *Coon v. Seymour*, 71 Wis. 340; *Nevil v. Clifford*, 55 Wis. 161.

*Johnson v. Coleman*, 23 Wis. 452, was a case brought to have a judgment of divorce declared to be void and of no effect on the ground of fraud. The court says: "But we can see no substantial objection to the practice of instituting a suit in equity for that purpose. It seems quite as suitable a method to review the questions involved, and to adjudicate upon the rights of the parties, as would be afforded by a motion. Mr. Story says that there is no doubt of the jurisdiction of courts of equity to grant relief against a former decree, when the same has been obtained by fraud and imposition, and this must be done by an original bill in the nature of a bill of review. Story, Eq. Pl. § 426."

In *Hooper v. Smith*, 74 Wis. 530, a motion was made to set aside a deficiency judgment in foreclosure for facts existing before the foreclosure judgment was entered, and also facts that had transpired afterwards. The facts were in dispute, and the rights of third parties were involved. Mr. Justice CASSODAY said: "If the judgment for deficiency was wrongfully obtained, and is inequitable, and the grounds of appellant's motion are meritorious, and he has not lost his rights by. laches or otherwise, then there would seem to be no reason why he should not be relegated to his remedy by action. That such an action may be maintained in a proper case has frequently been determined," — citing the cases hereinbefore mentioned. Where the relief is sought on the ground of newly discovered evidence alone, unmixed with any circumstances of fraud or collusion, the application must be made within the time limited by sec. 2879; but, when the action is based upon fraud, the limitation prescribed by subd. 7, sec. 4222, must govern.

We have heretofore adverted to the rule that one circuit court has no jurisdiction to open, review, set aside, or reverse the judgment of another circuit. From this rule another naturally follows, and that is that the action commenced to attack another judgment must be commenced in the court where the judgment attacked was rendered. A very common method of attack is to restrain the execution or enforcement of the alleged vicious judgment. At this point an important consideration is not to be lost sight of. The court, sitting in chancery, does not claim to exercise supervisory power over itself sitting as a court of law; neither will its own judgments be vacated or reversed. It would be an anomaly, indeed, for a court to restrain itself. It is against the offending party that the energies of the court are directed. Its remedial power is executed by putting restraint upon his usual liberty of following up his judgment. It acts upon the person, and not upon the proceeding. Black,

Judgm. § 357; *Erie R. Co. v. Ramsey*, 45 N. Y. 637; Story, Eq. Jur. §§ 875, 1574; *Pelham v. Moreland*, 11 Ark. 442. The judgment itself is not disturbed. The offending party is prevented from reaping the fruits thereof. It is, perhaps, unnecessary to decide to what extent the merits of the original case may be gone into in determining the facts necessary for the party's relief. The cases of *Aboulloff v. Oppenheimer*, 10 Q. B. Div. 295, and *Vadala v. Lawes*, 25 Q. B. Div. 310, may be consulted with profit on that question. It may be proper to say that the court ought to, and will, make such an examination of the facts as to ascertain the right and equity of the, parties, and will grant such relief as is proper to protect such rights.

Something has been said in the cases in regard to obtaining leave of court before such an action can be commenced. The petitioner in this case seems to labor under the idea that it must have the consent of this court before it can proceed. We know of no rule of court or statute making any such requirement. Under the old practice, bills brought to impeach decrees for fraud could be filed and prosecuted without leave of court (Story, Eq. Pl. § 426; *Kimberly v. Arms*, 40 Fed. Rep. 548). But when founded on new facts, discovered after the decree, such leave was necessary (3 Ency. of Pl. & Pr. 587). If, as we have endeavored to show, the old practice does not exist in this state, and the proper remedy, if any exists, is by direct action, then we are unable to see any reason why the analogies of the old practice should apply. Especially is this so when we keep in mind the fact that, in all such cases, the power of the court is directed against the parties, and not against the proceeding attacked. Courts are jealous of their judgments, but their power will never be extended to protect a party whose transactions are tinctured with fraud.

What we have said in relation to the existence of the practice by bill of review in this state is based upon the fact

that it has not been preserved or recognized in our Code. In some jurisdictions the practice has been preserved in its entirety. In others, it has been limited by express statutory enactment, or been held, under the peculiar language of the Code adopted, to exist as a cumulative remedy. Interesting discussions confirmatory of the position we have taken may be found in the following cases: *Corry v. Campbell*, 34 Ohio St. 204; *Brooks v. Howard*, 55 N. H. 69; *Seguin v. Maverick*, 24 Tex. 526; *Jacks v. Adair*, 33 Ark. 161; *Nealis v. Dicks*, 72 Ind. 374; *Brower v. Cothran*, 75 Ga. 9.

We express no opinion upon the merits of the defendant's showing of facts as a basis of the relief sought. The questions of diligence, and of the persuasive nature of the circumstances alleged as grounds for relief, are for the determination of the trial judge when the matter is properly planted in court.

*By the Court.*— The motion is denied, with $10 costs.