The Zinc Carbonate Co. vs. The First National Bank of Shullsburg.

---

THE ZINC CARBONATE COMPANY, Appellant, vs. THE FIRST NATIONAL BANK OF SHULLSBURG, imp., Respondent.

*April 10 — April 25, 1899.*

*Corporations: Conspiracy: Ultra vires: Judgments: Fraud and mistake: Remedies: Promoters: Joinder of causes of action: Pleading.*

1. A corporation may be held liable as a party to a conspiracy to defraud in a transaction outside the scope of its charter, and a complaint against it and its co-conspirators to enforce such liability, charging that the corporation and its co-defendants made and consummated the fraudulent agreement, is not defective on demurrer for want of allegations as to who acted for the corporation in making such agreement and as to special authority having been given by its governing body in regard to the subject.

2. If a corporation obtain a wrongful advantage of another in respect to a transaction outside its corporate powers, it cannot shield itself from liability to remedy the wrong by the doctrine of *ultra vires.*

3. Ordinarily, as to executed matters, the doctrine of *ultra vires* is an instrument to be used only by the state to punish a corporation for violating its charter, not by the corporation itself, or an individual, to aid in perpetrating or perpetuating a wrong.

4. The doctrine that relief from the inequitable use of a judgment must be sought by a motion in the action wherein the judgment was rendered, applies only where the time limited by statute for opening the judgment has not expired, or the court had no jurisdiction to enter it, or the time limited by statute for opening the judgment has expired and there is no fault in the judgment itself, the complaint being solely as to its inequitable use.

The Zinc Carbonate Co. vs. The First National Bank of Shullsburg.

5. A judgment free from jurisdictional defects cannot be relieved against on the ground of fraud or mistake going to the judgment itself after the term when rendered and the time prescribed by secs. 2832, 2879, Stats. 1898, except by an independent action in equity brought in the same court.

6. If several persons unite to promote the organization of a corporation and thereafter defraud it out of its assets for their benefit, part of the scheme being that some of the promoters shall be the active parties and take stock in and become officers and obtain control of the corporation, and thereafter while ostensibly acting in its interests carry out the fraud, and the scheme be fully consummated, one of the conspirators being a corporation, all are equally liable to make good to the defrauded corporation the loss caused to it, without reference to how the fruits of the fraud may have been divided, and an action will lie in the name of the injured corporation against the wrongdoers to compel an accounting of their ill-gotten gains and restitution thereof.

7. The test of whether there is more than one cause of action stated in a complaint in an equitable action is whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for La Fayette county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

Action to charge defendants as trustees of plaintiff corporation on account of money and property obtained by them from it without consideration, pursuant to a fraudulent conspiracy to create plaintiff and then absorb its assets for their private benefit. An accounting was asked on facts alleged as to all the wrongdoings of defendants, and relief, by way of damages, and otherwise, to indemnify plaintiff for such wrongs and protect it against further injury, including nullification of a judgment hereafter referred to, was also prayed for.

For the cause of action it was stated, in effect, in addition to formal allegations, as follows: In 1890 the defendant bank being the owner of a mill plant located on leased ground, designed for treating metallic ores, recently obtained by it

by the foreclosure of a chattel mortgage, from an insolvent corporation called the Shullsburg, Benton & New Diggings Milling Company, of which defendants Hayden and Savage were stockholders, the original cost of which did not exceed $5,000, and which was worth, when it came to the bank, not more than $3,000, and defendants being owners of an option to purchase for $5,000 a mine then in operation, yielding such ores as the mill plant was designed to treat, such mine not exceeding in value $5,000, the defendants made an agreement each with the other to organize a corporation with a capital stock of $25,000, cause the stock to be mostly subscribed by outside parties, obtain control of the organization and its books, induce it to purchase the mill plant at $13,000 in the belief, as to all stockholders not in the fraudulent scheme, that it was worth such sum and could not be bought for less, and belonged to the old milling company; and to purchase the mine for $7,000 in the belief, as to outside stockholders, that it was worth that sum and could not be bought of the proprietors for less, and to thereby make a secret and fraudulent profit to themselves of $12,000, and, while ostensibly managing the corporation in the interest of the stockholders, to obtain and convert to their own use its money and property and cause the books of the corporation to be so kept as to conceal the facts from stockholders generally. The scope of the fraudulent agreement, as alleged in great detail, was sufficiently broad to cover all the acts alleged to have been done, by means of which the money and property of plaintiff, while being handled by defendants Savage and Hayden ostensibly in its interest, was converted to the use of defendants without consideration and without knowledge of the directors or stockholders aside from Hayden and Savage.

The complaint further stated, in effect, that pursuant to the aforesaid agreement the plaintiff corporation was formed, the stock being subscribed in good faith by outside parties, ex-

cept $2,000 each by Hayden and Savage, who made their subscriptions to give their conduct the semblance of good faith, and to delude, and which did delude, the other subscribers into signing for stock, when the promoters did not intend, and it was a part of the fraudulent agreement that they should not, and they never did, part with anything of value upon their subscriptions; that Savage and Hayden obtained control of the organization of the corporation, the former being elected president and the latter secretary, and that, while permitted to manage and handle its affairs, acting on behalf of defendants they fully consummated the scheme of turning the mill plant and the mine over to it for $20,000, pretending, and all not in such fraudulent scheme believing from such pretense, that the vendor of the mill plant was the old company, and the price to the owner $13,000, and that the vendors of the mine were the proprietors who had given the aforesaid option and that the price to such proprietors was $7,000, thereby gaining to defendants the sum of $12,000, and that thereafter, during a period of some three years, they from time to time, in further consummation of the alleged fraudulent plan, took large sums of money from the corporation, including money paid in for stock, aggregating in all the sum of $10,000, besides other sums believed to have been taken but not yet discovered.

There were also allegations to the effect that in further consummation of the alleged fraudulent scheme, Hayden and Savage, the former acting as secretary of plaintiff and the latter as cashier of defendant bank, both being, as before stated, directors of plaintiff, contrived to have a judgment in form of law entered in the office of the clerk of the circuit court for La Fayette county for $3,712.23 in favor of the bank and against plaintiff, upon numerous claims of indebtedness, none of which had any foundation in fact, as both Hayden and Savage knew; that they caused an execution to be issued on the judgment against plaintiff's property and a levy to be

made thereon; that thereafter, in semblance of necessity created by such levy, and without authority except that which they assumed to possess as directors and officers of plaintiff, they gave to the bank for the benefit of defendants a chattel mortgage for $4,125.42, on all of plaintiff's property, assuming that such sum was due the bank on the judgment, when in fact the whole claim of indebtedness was fictitious and did not, on its face, amount to the sum mentioned in the mortgage into over $400; that as soon, practically, as the mortgage was made, defendants caused the bank to go through the form of taking the property, which was worth $20,000, and selling the same to itself, ostensibly, but for the benefit of defendants in fact, for $2,850, and the sheriff to indorse that sum as collected on the execution, though he collected no sum whatever but his fees; that thereafter, in further consummation of the alleged scheme, the bank held possession, and pretended to be the owner, of such property and to operate it for its own benefit, but operated it in fact for the benefit of defendants. There were further allegations to the effect that plaintiff, its stockholders, agents, and attorneys, were all, except Savage and Hayden, ignorant of each and all of the wrongful acts mentioned, till shortly before the commencement of this action.

Defendant bank demurred to the complaint generally for insufficiency, for want of jurisdiction of the court of the defendant bank or the subject of the action, because of the pendency of another action for the same cause, for defect of parties defendant in that the bank should not have been joined, and for improper joinder of causes of action. The demurrer also treated that part of the complaint relating to relief against the alleged fraudulent judgment as the subject of an independent cause of action, and demurred to such cause of action upon all the grounds before stated. The demurrer was sustained.

For the appellant there were briefs by *Van Dyke & Van*

*Dyke & Carter* and *Spensley & McIlhon*, and oral argument by *Calvert Spensley*.

For the respondent there was a brief by *Orton & Osborn* and *J. B. Simpson*, and oral argument by *P. A. Orton*. To the point that the act complained of being foreign to the powers of the corporation and therefore to the scope of the authority of any officer or agent therefor, and such act being the act of the agent and not the corporation, there was no implied authority to do the act, and it must be alleged that the officer was specially authorized by the corporation to do it, or that, with full knowledge of the facts, the corporation ratified the unauthorized act, they cited *Carter v. Howe M. Co.* 51 Md. 290, 34 Am. Rep. 311; *Fiskill S. Inst. v. Nat. Bank*, 80 N. Y. 162, 36 Am. Rep. 595; 5 Thomp. Corp. § 6322; 17 Am. & Eng. Ency. of Law (1st ed.), 157, 158; *Alexander v. Cauldwell*, 83 N. Y. 480; *Allegheny Co. Workhouse v. Moore*, 95 Pa. St. 408; *Brooklyn G. R. Co. v. Slaughter*, 33 Ind. 185; *Mali v. Lord*, 39 N. Y. 381; *Poulton v. L. & S. W. R. Co.* L. R. 2 Q. B. 534; *Allen v. L. & S. W. R. Co.* L. R. 6 Q. B. 65; *Edwards v. L. & N. W. R. Co.* L. R. 5 C. P. 445.

MARSHALL, J.    The complaint in this case appears to be free from novelty except for the magnitude of the fraudulent scheme set forth, its completeness, the boldness with which it was consummated, and the fact that a national bank was one of the guilty parties.    But, waiving for the moment the question of whether a corporation can be charged as such in the form attempted in the complaint, no reason is perceived by reading such complaint why it is open to the objections raised by the demurrer.    The well-known ability of the judge who passed upon the complaint below precludes belief that he condemned it except upon some well-defined theory of insufficiency within the scope of respondent's objections. What that theory was is not disclosed by the order, or in

the return, or discoverable by our own reading of the plead-
ing. The appellant has favored us with the result of much
research and learning upon the theory that the learned cir-
cuit court condemned the complaint because the wrongful
acts charged, though sufficient to bind a natural person, are
not to bind a corporation in a matter beyond the scope of
its corporate powers. This and other courts have so often
held that a corporation cannot violate its charter for pecun-
iary gain and retain the benefits of its illegal conduct by put-
ting up the shield of *ultra vires*, or a person set himself up
as the champion of the state in a court of justice to either
punish or defend a corporation by an appeal to such doctrine
in order to enable him or it to obtain or retain an uncon-
scionable advantage, that we may safely reject the idea that
it was thought a contrary view ruled the issue of law in the
case adversely to appellant. The doctrine of *ultra vires* is a
most powerful weapon to keep private corporations within
their legitimate spheres and to punish them for violations of
their corporate charters, and it probably is not invoked too
often; but to place that power in the hands of the corpora-
tion itself, or a private individual, to be used by it or him
as a means of obtaining or retaining something of value
which belongs to another, would turn an instrument in-
tended to effect justice between the state and corporations
into one of fraud as between the latter and innocent parties.
Such is the modern doctrine, evolved and settled in the
progress of events, reaching from the time when private cor-
porations were few and the doctrine of *ultra vires* invoked
quite as freely as to them as to public corporations, to a time
when substantially all restrictions to the formation of such
private bodies were removed, and they were authorized and
commenced to exist, great and small, everywhere, for the
purpose of conducting almost every kind of legitimate busi-
ness. If such a body transcend its powers it commits a
wrong against the state, and ordinarily it is for the state,

The Zinc Carbonate Co. vs. The First National Bank of Shullsburg.

only, to call it to account for such violation. *John V. Farwell Co. v. Wolf*, 96 Wis. 10; *Winterfield v. Cream City B. Co.* 96 Wis. 239; *McElroy v. Minnesota P. H. Co.* 96 Wis. 317; *Hubbard v. Haley*, 96 Wis. 578; *Davis v. O. C. R. Co.* 131 Mass. 258; *Bensiek v. Thomas*, 66 Fed. Rep. 104; *Railway Co. v. McCarthy*, 96 U. S. 258; *Wright v. Pipe Line Co.* 101 Pa. St. 204; *Nashua & L. R. Corp. v. B. & L. R. Corp.* 164 Mass. 223.

With what has been said we may dismiss from consideration the doctrine of *ultra vires* as affecting this case, and it is so near akin to the idea that a corporation cannot commit or be liable for a tortious act that we will spend no time on that. Counsel for respondent freely admit that a corporation may be liable for a tortious act and as a co-conspirator in a scheme to commit fraud, but insist that unless the fraud be a wrongful means resorted to, to accomplish something which the corporation has a lawful right to do by lawful means, fraud cannot be attributed to it unless its officers or agents who assumed to act in its behalf were specially authorized to so act, and that a statement of the cause of action to remedy such a wrong requires the special authorization to be pleaded. We need not, for this appeal, determine whether the special authorization is necessary. If it be admitted, for the purposes of the discussion, that such is the case, yet the complaint charges that the corporation did the wrongful acts. That is repeated over and over again. How it became involved in the transactions complained of is a matter of proof in respect to which an issue need not necessarily be tendered by the complaint. If the allegations charging the corporation are open to any criticism, it is upon the ground of indefiniteness to be reached by motion and not by demurrer. From the allegation that the corporation conspired with Savage and Hayden, it is reasonably inferable that everything was done by its governing body necessary to the authority of those who assumed to act in its behalf. Necessary facts, reasonably inferable from those

pleaded, under our liberal rules of pleading, must be considered as pleaded by way of such inference. *Miller v. Bayer*, 94 Wis. 123. It may properly be said, in addition, on this point, that the complaint fairly shows ratification by the corporation of the scheme entered upon and carried out in part by its officers and agents assuming to act in its behalf with knowledge of the facts. That is sufficient to render it liable by ratification, the same as if such officers and agents were originally authorized to represent and act for it.

The foregoing covers the ground upon which the demurrer was sustained below, so far as it can be discovered from appellant's brief, but respondent calls our attention to several other supposed defects, most of which, we apprehend, did not receive attention below because not there suggested; yet as the demurrer must be sustained here if sustainable at all, though the point which ruled the matter in the original jurisdiction be untenable,— a practice quite unfair to a trial court, though too well intrenched in our system to be disturbed,— all the points made by respondent's counsel have received careful attention, yet without discovering any cause for condemning the complaint on any of the grounds stated in the demurrer. The more important of respondent's suggestions will be treated in detail.

It is said the complaint alleges that Savage and Hayden, as officers of plaintiff, bought the mill property for the nominal consideration of $13,000, while they paid the bank therefor only $3,000; that the conspiracy alleged was to sell the property, and the bank is not shown to have been connected with that. That overlooks the matters of inducement pleaded, to the effect that the bank, at the time the alleged fraudulent scheme was made, owned the worthless mill property which it had acquired in due course of business in efforts to collect a bad debt, and that it became a party to such scheme as a means to collect its money, and, incidentally, to obtain fraudulent gains, and that when the complaint comes down

to the fraudulent agreement it is alleged that the sale of the mill plant was to plaintiff for $10,000 more than it was worth and more than the cost to the conspirators, and that it was a part of the fraudulent agreement that Savage, the cashier of defendant, and Hayden, should obtain control of the proposed corporate organization, its books and papers, and then, while ostensibly handling its business in the interest of the corporation, consummate the pre-arranged plan to swindle it for the benefit of all the defendants, and to manipulate its records so as to hide the facts. It needs no extensive discussion to show that the allegations which follow, to the effect that the scheme was consummated, are laid definitely within the original plan, to which it is very clearly alleged defendant bank was a party. The argument of counsel on this point, that at most the alleged conspiracy was to sell and that the allegations as to consummation include only Savage and Hayden, by charging that they, as officers of the defendant, bought, and that the two acts are not connected, hardly bears the test of reasonable analysis. The story told is, plainly, that Savage and Hayden, acting for the conspirators, pursuant to the agreement to sell the mill plant and the mine to the appellant, in a way to, fraudulently, secure gains for such conspirators, of which it is plainly said, over and over again, the bank was one, purchased the property for the corporation so as to make such gains to the amount of $10,000.

Again, it is suggested that as to the mine the allegations regarding the bank's connection with it are subject to the same infirmity as those in regard to the mill plant, and that, as defendants obtained the option on the mine before the organization of plaintiff was thought of, they had a right, without fraud, to sell it in good faith at an advance. What has been said as to the alleged connection of the bank with the fraudulent sale of the mill plant, applies equally as well to the sale of the mine. True, if defendants or the bank owned the mine, either one or all had a right, acting in

good faith, to sell it at an advance, but the mischief of the matter was, according to the complaint, that neither the bank nor either of the defendants acted in good faith. The bank did not own the mine, neither did the defendants. Savage and Hayden occupied positions of trust and confidence as to the subscribers to the stock of the corporation in the first instance, and after its organization they occupied such positions in regard to it as directors and officers. In that situation, for Hayden and Savage to pretend that the mine was the property of third persons and could be bought only for $7,000, while they and the bank secretly controlled the right to purchase it for $2,000 less, and, by that means, acting for the buyers ostensibly, but secretly for the sellers, of whom the bank was one, to make the sale of the property to appellant, rendered all of the defendants liable to refund the profits they made out of the transaction and without reference to the proportion which each received of the fruits of the fraud; and an equitable action to charge them as trustees of their ill-gotten gains and to compel an accounting for and restitution of the same, was proper, though not the exclusive remedy for the wrong. *Fountain Spring P. Co. v. Roberts*, 92 Wis. 345; *Franey v. Warner*, 96 Wis. 222; *Hebgen v. Koeffler*, 97 Wis. 313.

On that branch of the case which respondent treats as a separate cause of action to avoid a judgment, it is said that the neglect of Hayden, the secretary of plaintiff, to defend, was neglect of the corporation, and his knowledge its knowledge, therefore equity will not grant relief, citing *Nye v. Sochor*, 92 Wis. 40. That was a case involving the question of mere neglect. If an agent merely neglect the principal's business, action or nonaction of the former constituting such neglect will be attributable to the principal. But the idea that an agent can collude with a third person to bring about such neglect for the purpose of obtaining the principal's property for the joint benefit of the agent and such third

person, and then shield themselves behind the doctrine that neglect of the agent is neglect of the principal, is not worthy of serious consideration.    The mere statement of it is sufficient to show its absurdity.

Further, as to the supposed separate cause of action, the point is made that under the Code of this state circuit courts have jurisdiction of what were formerly suits in equity, as well as actions at law, all distinctions between such suits and actions having been abolished, and that, under the new system, a direct action to open or vacate a judgment will not lie; that the only remedy is by petition at the foot of the judgment, and that in such a proceeding other parties may be brought in.    To that point *Stein v. Benedict*, 83 Wis. 603, is cited.    That was a case commenced in the circuit court to restrain the enforcement of a judgment rendered in another such court against one defendant who was really surety for another defendant who was solvent.    There was no question but that the judgment was properly rendered, and that the judgment creditor was legally and equitably entitled thereto.    The complaint was merely of the inequitable use of the judgment in that threats were made to collect it out of property of the surety instead of that of the principal.    The court decided that the action would not lie, first, because one circuit court will not restrain the enforcement of a judgment rendered in another circuit court; second, because relief was obtainable by motion in the action in which the judgment was rendered.    Said Justice PINNEY, who wrote the opinion, in substance, the power of the court in which the judgment was rendered to grant the relief by petition, *in cases like this, is undoubted*.    The authorities cited to support that statement clearly indicate that the court had in mind only situations involving the inequitable use of a valid judgment, one free from attack originally, not one claimed to be invalid because of fraud in its rendition.    Among the citations is *Platto v. Deuster*, 22 Wis. 482, where the wrong com-

plained of was threatened enforcement of a judicial sale by writ of assistance against a person not bound by the judgment upon which the sale was based. *Cardinal v. Eau Claire L. Co.* 75 Wis. 405, is another, where the wrong sought to be prevented was a second collection of a judgment, it having been once paid but not satisfied. What was said in the *Stein Case*, and others of its class, particularly *Endter v. Lennon*, 46 Wis. 299, about applying by petition in the original cause, must not be read as authorizing such a proceeding to attack and annul a judgment on the ground of fraud or to prevent its enforcement on that ground, the fraud reaching back to and entering into the proceedings which resulted in the judgment. There were some observations made in the *Stein Case*, about the filing of a petition and its having the nature of a cross bill or supplemental bill and the bringing in of new parties and there being substantially a new trial and the entry of a new or supplemental decree, referring to secs. 2610, 2883, R. S. 1878. What was thus said was outside the case. Such sections refer to the bringing in of parties, the formation of issues and the entry of judgments, so as to settle by a single decree the rights of all parties,— not to proceedings to review a judgment already entered. The method provided by the Code for opening a judgment, and for further proceedings in the cause, is exclusive. After the time limited by statute has expired, relief against a judgment on the ground that it ought not to have been rendered, for some cause not presented and passed upon by the court, must be obtained by an independent action in equity. *Crowns v. Forest L. Co.* 102 Wis. 97. In such independent action the complaint may be spoken of as a bill in the nature of a bill of review, in the sense that it is the pleading on the part of a plaintiff to accomplish, in effect, the purpose of the former bill of review. Strictly speaking bills of review and bills in the nature of bills of review, as such pleadings were known to the old chancery practice, are not.

known to the Code.    The statutory method, by motion, for
opening a judgment after the term at which it was rendered,
in order to obtain relief from fraud or mistake, is regulated
by sec. 2832, Stats. 1898, limiting the time to one year after
notice of the judgment, and sec. 2879, which authorizes a
new trial to be granted on an application made in whole or
in part upon newly discovered evidence, within one year
from the verdict or finding.    This court said in *Whitney v.
Karner*, 44 Wis. 563, overlooking sec. 2879, which was then
new: "A circuit court has no power to set aside its own
judgment after the term at which it was entered, except
where the judgment is void, or to correct clerical errors,
other than under the power granted by sec. 38, ch. 125, R. S.
1858," now sec. 2832, Stats. 1898.    The two sections referred
to cover the only ways provided by the Code for the reopen-
ing of a cause after the judgment and the term, on account
of matters not of record, and a retrial on the merits.    But
that does not militate at all against the power of the court
by motion to prevent the inequitable use of a valid judg-
ment, as instanced in case of an attempt to collect a judg-
ment twice and the case of an attempt to collect the judgment
of a surety where there was ample property in sight belong-
ing to the principal out of which it could be readily collected.
To such situations *Endter v. Lennon* and *Stein v. Benedict*
apply.    Neither does the limitation upon proceedings by
motion to open a judgment upon some ground going to the
right of plaintiff to the relief granted, militate at all against
jurisdiction in equity to protect a person from a judgment
obtained against him by fraud.    So, if the facts upon which
it is sought to avoid the effect of the alleged fraudulent
judgment in this case constitute a pretended separate cause
of action, the court has jurisdiction of it and of the parties,
and obviously there is no defect of parties.    Whether the
relief sought in regard to the judgment is the proper relief,
or whether the prayer suggests relief beyond the power of

the court, it is not necessary here to decide.   It is sufficient, on the demurrer, that the facts pleaded warrant substantial equitable relief as to the alleged fraudulent judgment.

The last two points need not necessarily have been treated, because, in our view of the complaint, the pleader did not attempt to, and did not, state more than one cause of action. Such points are discussed because the subject covered is likely to have some material bearing on further proceedings in the cause.   There is but one subject of action,— the conspiracy to defraud and its consummation to the damage of plaintiff.   All the allegations of fact are parts of the presentation of that one subject.   The test of whether there is more than one cause of action stated or attempted to be stated in a complaint is not whether there are different kinds of relief or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication.   *Gager v. Bank of Edgerton*, 101 Wis. 593; *Bassett v. Warner*, 23 Wis. 673.   Measuring the complaint before us by that inflexible rule of equity pleading, it is easily seen that there is but one primary right which plaintiff is endeavoring to have vindicated, and that is the right to reimbursement for the damages which the corporation has suffered by the alleged consummated fraudulent scheme of defendants.

What has been said leaves nothing more that occurs to us which can be profitably discussed or need be decided. The complaint seems to be free from any of the objections urged against it by respondent and the demurrer to have been improperly sustained.

*By the Court.*— The order appealed from is reversed, and the cause remanded for further proceedings according to law.