# CASES DETERMINED

# January Term, 1917.

GIMBEL and others, Appellants, vs. WEHR and another, Respondents.

WEHR and another, Appellants, vs. GIMBEL and others, Respondents.

*October 27, 1916—January 16, 1917.*

*Motions: Order to show cause: Judgment: Relief against: Enforcement: Matters to be considered: Evidence: Easements: Right of way: "Practicable" alley: Encroachments.*

1. An order to show cause is equivalent to a notice of motion, and the court proceeds thereon as upon a motion.

2. Relief against a judgment upon any ground can be had only pursuant to the Code procedure in the ways prescribed in sec. 2832, Stats., or by motion for new trial under sec. 2879, unless the facts are such as to warrant relief in a direct action to restrain a party from reaping the fruits of an unconscionable judgment.

3. In a proceeding under sec. 2966, Stats., to enforce a judgment which required the performance of an act other than the payment of money or delivery of property,—*i. e.* that an alley over certain land, twenty feet wide and eight feet high, should be "opened and made practicable,"—the court properly examined the pleadings in the action wherein such judgment was rendered, and also certain agreements referred to in the judgment, for the purpose of ascertaining its meaning and effect.

4. Where the specification in such judgment as to the width of the alley was, as shown by the record, not intended to be a determination that certain encroachments upon such width by walls, columns, etc., were unlawful, the court, in the proceeding to enforce the judgment, properly received and considered evidence as to the nature and extent of such encroachments and their effect on the use and practicability of the alley; and such evidence is *held* to support a finding that the encroachments with-

in the limits of the alley do not affect its practical usefulness nor invade the rights of abutting owners.

5. It further appearing that the grade of the alley is substantially as it was at the time of a certain agreement referred to in the judgment, and that any variation thereof would violate the right confirmed by such agreement, it is *held* that the order of the court fixing the grade as it now is correctly interprets the judgment.

6. The owner of, a right of way across the land of another, whether it was acquired by grant or by prescription, is entitled only to a reasonable and usual enjoyment thereof, in view of all the circumstances of the case and of the use then and theretofore made of the premises affected by it, and the owner of the soil is entitled to all the rights and benefits of ownership consistent with the easement.

Appeals from two orders of the circuit court for Milwaukee county: F. C. Eschweiler, Circuit Judge. *Affirmed.*

This is a proceeding to enforce a judgment rendered by the circuit court for Milwaukee county January 17, 1906, in a consolidated action. The two orders appealed from are dated respectively May 22, 1916, and June 12, 1916.

The judgment in the consolidated action determines and adjudges that *Jacob, Isaac, Charles, Daniel, Ellis A., Louis S.,* and *Benjamin Gimbel* and *Nathan Hamburger,* as copartners under the name of 'Gimbel Brothers, and their successors and assigns are entitled to build on the west eighty feet of lots 1, 2, and 3 in block 72 of the Fourth ward, city of Milwaukee; that *Henry Wehr,* as owner of the northeast parcel of these lots, lying east of the west 121 feet thereof and adjoining the Milwaukee river, is entitled, as appurtenant to his land, to a passageway over the south twenty feet of lot 3 to West Water street, and that the owners of the remainder of these lots 1, 2, and 3 have the right to a passageway over that part of the south twenty feet of lot 3 owned by *Henry Wehr,* to the Milwaukee river; that *Henry Wehr* is entitled to have this passageway opened May 1, 1915; that *Henry Wehr* is entitled to have opened over the parcel of lot 3 (being the forty-one feet next west of *Wehr's* parcel),

Gimbel v. Wehr, 165 Wis. 1.

owned by the trustees of John Plankinton, deceased, "an alley or passageway twenty (20) feet wide and eight (8) feet high," upon condition that an alley twenty feet wide and eight feet high be opened and maintained over *Wehr's* prop-

The above diagram may be of some help in understanding the situation.—REP.

erty to the river; that *Henry Wehr* "is also entitled to have opened and maintained the spaces or areas" on the Plankinton property, as "described in a certain agreement between John Plankinton and said *Henry Wehr* dated July 15,

1887," and recorded in the office of the register of deeds; that the Gimbel Brothers and the Plankinton trustees "are obligated to said *Henry Wehr,* to open such spaces or areas;" that *Henry Wehr* is entitled to have opened a passageway "eight (8) feet high and twenty (20) feet in width" from the Plankinton property to West Water street, upon condition that a passageway of the same width and height be opened and maintained over the *Wehr* property to the river; that Edward L. Merrill, his heirs and assigns, are entitled on May 1, 1915, to the opening of a passageway over the south twenty feet of lot 3 from West Water street to the river, upon condition that he or they open, for the benefit of the other owners of lot 3, a similar twenty-foot passageway over his part of the south twenty feet of lot 3: "The dimensions of such passageway to which said Edward L. Merrill, his heirs or assigns, are entitled are determined by the terms of the aforesaid agreement between Ira E. Goodall and Sherman M. Booth and wife."

*Henry Wehr,* defendant in the first and plaintiff in the second of the actions that were consolidated, petitioned the circuit court for an order that the parties to the consolidated action and others, who are made parties to this proceeding, show cause before the circuit court why they should not comply with the judgment of January 17, 1906, in the consolidated action by opening and maintaining the passageway or alley as determined in such judgment; and why those of them who are obligated to open and maintain such passageway or alley should not be punished as for contempt for failing to comply with such judgment.

The record shows who holds the title to the lots in question; the findings of fact and conclusions of law in the consolidated action, the Booth-Goodall agreement, the Plankinton-Wehr agreement, and the evidence taken on the hearing of this proceeding tending to show the conditions and uses of an alley by the owners of these premises in former years, the conditions and location of the structures abutting there-

on during such use, the condition of the passageway during the time it was closed; and the evidence adduced by the parties tending to show the width, the height, and the grade of the passageway as it now exists. There is also evidence of the present use of the passageway and evidence of tests made as to whether or not the passageway as it now exists is "opened and made practicable" within the calls of the judgment in the consolidated action. The conclusions of the court upon the trial of the question presented in this proceeding are embodied in the following orders of May 22, 1916, and June 12, 1916, from which these appeals are taken:

"It is ordered that the passageway through the so-called Gimbel building as made by the *Gimbel Brothers Company,* and tendered by them to the plaintiff and defendant *Wehr,* ought to be modified, in order to conform with the judgment entered and rendered herein on April 8, 1905, as follows, to wit:

"1. That the upward slope of said alley should commence at a point in said alley which shall be on the west line of the so-called Plankinton property.

"2. That the grade starting at that point shall be for the next west twenty (20) feet, that is to say, over the Merrill property, at such a slant as would bring it to the grade of West Water street as it was at the time of the entry of the judgment herein, that is to say, one and 39/100 (1.39) feet lower than the present grade of West Water street.

"3. The grade shall then proceed from the point and grade fixed in the preceding sentence on a uniform rise to the west line of the Gimbel building, that is to say, to a point at such height as shall be established and permitted by the city of Milwaukee in the sidewalk on said west line of the Gimbel property, being the permitted grade height in said sidewalk on said west line.

"4. From such west line of the Gimbel building it shall slope downward to the now established grade of said West Water street.

"5. That such passageway shall be at all points therein of a height of eight (8) feet in the clear from the floor of such passageway to the roof thereof.

"6. That the base of the column on the south side of the Plankinton property, which now projects a few inches into said passageway, shall be chipped off so as to be flush with the face of said column.

"7. That there need be no removal or change in the columns now standing partly on said passageway on the twenty-foot strip in question here, and which said columns support the Gimbel building.

"8. That there need be no change made in the walls now standing on the north and south portions of said twenty-foot strip over the Plankinton forty-one (41) feet.

"9. That the plaintiff and defendant *Henry Wehr* and the *Wehr Building Company* have the right to use a reasonable portion of said twenty-foot strip on the south side of the *Wehr* property to support any building that they or either of them may erect upon the said *Wehr* property, provided that the said opening on said twenty-foot strip shall be kept at least eight (8) feet in the clear above a grade substantially the same as now exists over the said twenty-foot strip on the Plankinton forty-one feet.

"10. That the *Gimbels* may close the said passageway at the east and west ends thereof upon the property owned or leased by them, provided, however, that said closing shall be with doors or gates so arranged and maintained that they shall in no wise interfere with the use and operation of said alley by the other adjacent owners.

"11. That all the changes herein provided for to be made in said alley west of the Plankinton property, and also as to the cutting of the base of the column on the Plankinton property, shall be at the expense and cost of the *Gimbels*.

"12. That any and all questions as to damages sustained by said *Henry Wehr* or the *Wehr Building Company* are expressly reserved (by agreement of the parties) and order of the court until further proceedings herein.

"13. That the changes in said alley in this order required shall be commenced by said *Gimbels* within twenty (20) days after service of notice of entry of this order upon them or their attorneys, and shall be prosecuted thereafter immediately and with all due speed, unless proceedings herein be stayed upon any appeal that may be taken to the supreme court.

"14. That upon compliance by said *Gimbels* with this

order, that the application to punish them, or any of them, as for a contempt will be denied.

"15. That the question of any costs in the present proceeding shall also abide further proceedings herein."

The second order is as follows:

"It is ordered by the court now here that the motion of *Henry Wehr* and *Wehr Building Company* that the order entered herein on May 22, 1916, be vacated and set aside and the proposed order, of which a copy is attached to the order to show cause herein dated June 9, 1916, be and the same is hereby denied."

In behalf of *Gimbel Brothers, Inc.,* and *Jacob Gimbel* and others there was a brief by *Glicksman, Gold & Corrigan* and *Thomas M. Kearney,* all of Milwaukee, and oral argument by *Mr. Kearney, Mr. Nathan Glicksman,* and *Mr. Walter D. Corrigan.*

For *Henry Wehr* and the *Wehr Building Company* there were briefs by *Kronshage, McGovern & Hannan* of Milwaukee, attorneys for *Henry Wehr,* and *Lines, Spooner, Ellis & Quarles* and *C. H. Van Alstine,* all of Milwaukee, attorneys for *Wehr Building Company;* and the cause was argued orally by *Mr. F. E. McGovern, Mr. Theo. Kronshage, Jr.,* and *Mr. L. A. Olwell,* for *Henry Wehr,* and *Mr. Geo. Lines* and *Mr. Van Alstine,* for the *Wehr Building Company.*

For the defendants *Upham* and *Miller,* as trustees under the will of John Plankinton, there was a brief by *Upham, Black, Russell & Richardson* of Milwaukee, and oral argument by *Wm. E. Black.*

SIEBECKER, J.  This proceeding was commenced by the petition of *Henry Wehr* to enforce the judgment in the consolidated action entered January 17, 1906.  The petitioner claims the right to enforce the judgment in this manner under the provisions of sec. 2966, Stats. 1915:

"Where a judgment requires the payment of money or the delivery of real or personal property the same may be enforced in those respects by execution as provided by law.

Where it requires the performance of any other act a certified copy of the judgment may be served upon the party against whom it is given or the person or officer who is required to obey the same, and if he refuse he may be punished by the court as for a contempt, and his obedience thereto enforced."

The object of the present proceeding is manifestly to enforce obedience to the court's judgment. It is a coercive proceeding for the performance of duties imposed by the judgment and which are now within the power of the alleged contemnors. The proceeding being one on order to show cause is equivalent to a notice of motion and the court proceeds as upon motion in the action. *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W. 229; *Emerson v. Huss,* 127 Wis. 215, 106 N. W. 518. This makes the proceeding one of a civil nature, having for its immediate object protection of the rights of the petitioner as a party to the judgment. It can only be taken at the foot of the judgment in the court wherein the action is pending. It is, however, contended by the parties who oppose the petition that this proceeding is a bill to enforce the decree, or one in the nature of such a bill to make the judgment effective. The argument is therefore made that the doctrine of *res adjudicata* is not applicable to prevent the court from examining the case to ascertain whether or not the enforcement of the judgment would be equitable and just, and that if the court finds under existing conditions that inequity will be done by coercing performance of the duties prescribed in the judgment, the court will deny its assistance to execute the commands of the judgment. The Code procedure displaces the ancient practice for the enforcement of remedial rights and substitutes the procedure provided in the statutes. It is said in *Crowns v. Forest L. Co.* 102 Wis. 97, 100, 78 N. W. 433:

"The Code, therefore, cut off and wiped out many of the forms of procedure existing under the old practice, that had a tendency to delay or prolong litigation. . . . Within one

year after notice, the court might, in discretion, relieve a
party from a judgment or other proceeding against him
'through his mistake, inadvertence, surprise, or excusable
neglect,' and might supply omissions when the party had
failed to conform to the law, and permit amendments to
make the proceedings conformable thereto."

The grounds for relief from a judgment are there elab-
orately discussed and the conclusion reached that relief
against judgments upon any ground can be had only pur-
suant to the Code procedure in the ways therein prescribed,
as above stated, or by motion for a new trial within the
period provided after verdict or findings or upon newly dis-
covered evidence, and, if these remedies are not applicable,
then there is no remedy within the power of the court that
has rendered the judgment unless the facts and circumstances
disclose a case for a direct action to restrain the party from
reaping the fruits of an unconscionable judgment.  Among
the cases in this court treating this question are *Crowns v.
Forest L. Co.* 102 Wis. 97, 78 N. W. 433; *Zinc C. Co. v.
First Nat. Bank,* 103 Wis. 125, 79 N. W. 229; *Uecker v.
Thiedt,* 133 Wis. 148, 113 N. W. 447; *Boring v. Ott,* 138
Wis. 260, 119 N. W. 865; *Zohrlaut v. Mengelberg,* 158 Wis.
392, 148 N. W. 314, 149 N. W. 280.

The judgment in this case is complete in its terms and de-
clares the rights of the parties to the respective parcels of
land in lots 1, 2, and 3 above described and those appurte-
nant thereto.  It is adjudged that the owners thereof have
the right to an alley or passageway over the south twenty
feet of lot 3, extending from the river to West Water street.
Paragraph 3 of the judgment declares: "That said *Henry
Wehr* is entitled to have such passageway opened and made
practicable."  Paragraph 4 provides that over the forty-one
foot wide parcel adjoining the *Wehr* property on the west
shall be opened an alley "twenty (20) feet wide and eight (8)
feet high; on the express condition, however, that simul-
taneously therewith an alley or passageway twenty (20) feet

wide and eight (8) feet high be opened and maintained" over *Wehr's* property, "extending east to the Milwaukee river." By paragraph 5 it is adjudged that *Henry Wehr* is entitled, upon the opening of this alley, "to have opened and maintained the spaces or areas" on the Plankinton estate property "described in a certain agreement between John Plankinton and said *Henry Wehr,* dated July 15, 1887." It is also adjudged that Gimbel Brothers and the Plankinton estate are obligated to *Wehr* "to open such spaces or areas." Paragraph 6 declares *Wehr* is entitled to have opened and maintained the alley over the west eighty feet of lot 3 "eight (8) feet high and twenty (20) feet wide." By paragraph 7 the Gimbel Brothers are directed to open the alley May 1, 1915, and in case they fail to do so they are to pay to *Wehr,* his heirs or assigns, the necessary expense of opening and restoring the alley as provided in the judgment. By paragraph 8 it is declared that Edward L. Merrill, his heirs and assigns, are entitled to the opening of this alley upon condition that he or they open the alley over their property for the other owners of land over which it passes. "The dimensions of such passageway to which said Edward L. Merrill, his heirs and assigns, are entitled are determined by the terms of the aforesaid agreement between Ira E. Goodall and Sherman M. Booth and wife."

The parties to this proceeding are involved in a dispute as to the effect of this judgment and to what extent a court may properly examine the records in the action to interpret its terms and ascertain its exact meaning. The judgment in terms refers to the Goodall-Booth and the Plankinton-Wehr agreements and hence necessarily requires examination thereof to ascertain what is meant by the determination resting thereon. The court may also properly look into the issues raised by the pleadings and the admitted facts therein and the court's findings to enable the court to interpret the terms of the judgment in the light thereof in order to ascertain its meaning and effect. *Lardner v. Williams,* 98 Wis.

514, 74 N. W. 346; *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589.   This court in *Gerbig v. Bell,* 143 Wis. 157 (126 N. W. 871), on page 162 declared:

"The ascertainment of what questions have been litigated in an action presents pure questions of fact which are not necessarily established by the pleadings and judgment, but which may be shown by the findings of the court or a referee, by the verdict, by the bill of exceptions, or by extrinsic evidence, as well as by the pleadings and judgment."

We think the trial court in this proceeding very properly looked into the pleadings of the parties, the findings of the court, and the Goodall-Booth and Plankinton-Wehr agreements, and in the light thereof interpreted the terms of this judgment in order to ascertain its meaning and effect.

In the decision by the trial court in this proceeding the court specifies with particularity and *in extenso* the conveyances of the different parcels of land, the facts of the pleadings in the action and·the contracts as exhibited thereto, which he examined to ascertain the rights of the parties and to determine what encroachments actually existed upon the alleged right of way or alley, consisting of walls, piers, and structures connected with buildings abutting on the alley. The court also examined the findings of fact made by the court on which the judgment rests.   Repetition of these matters at this time would result in an extension of many pages and be of no useful service.   Upon a full consideration thereof the trial court held:

"That the main question litigated was whether or no the building on the west twenty feet might be constructed and remain there, closing the alley during the period of the Wehr-Gimbel lease, and secondly, whether or not *Wehr* had lost his right to such passageway in any manner."

The court also held in the light of the record in the case and the terms of the judgment that:

"*Mr. Wehr* had not lost his right of passageway; that the action of the parties concerned under the Booth-Goodall agree-

ment and the Plankinton-Wehr agreement had been to re-
duce the alley from one open to the sky to one eight feet in
the clear, . . . and . . . that the court did not determine
that this alley or passageway was to be twenty feet in the
clear its entire length, and . . . that the narrowing of the
passage between the Plankinton buildings constituted no un-
lawful encroachment on the right of way, nor that the wall
on the south end of the *Wehr* property was an unlawful en-
croachment, . . . nor that the columns supporting the Gim-
bel building . . . were an unlawful encroachment."

These conclusions are well supported by the terms of the
judgment and the facts disclosed in the record. The mat-
ters disclosed by the record resulting in the judgment of the
consolidated action do not show that the terms of the judg-
ment specifying the width of the alley as twenty feet were
intended to be a specific determination that these encroach-
ments on the twenty-foot limits were held to be unlawful en-
croachments. It therefore devolved on the trial court to
hold an inquest on this issue between the parties. Much evi-
dence was adduced on the hearing of this issue showing the
extent and nature of these encroachments and their effect on
the use and practicability of the alley. The result of the
trial of the question is embodied in the following part of the
trial court's decision:

"I find no evidence presented on this hearing that would
satisfy this court that the lessening at certain points in this
alley by reason of the encroachments mentioned are such as
of themselves make the alley less practicable."

The facts before the court clearly sustain this conclusion.
It appears that the abutting owners on the alley found no in-
convenience from these encroachments in the use of the alley
and that they acquiesced and permitted their continued ex-
istence throughout a long period of time. This conclusion
is also supported by the agreements of the parties dealing
with the existence of the alley. The court's determination
(1) "That the base of the column on the south side of the
Plankinton property . . . shall be chipped off so as to be

flush with the face of said column;" (2) that the columns supporting the Gimbel building partly within the limits of the alley are to remain without a change; (3) that the walls in the Plankinton property on the north and south sides of the alley are to remain; and (4) that *Wehr* has the right to use a reasonable portion of the alley on the south side of the *Wehr* property for support of a building on such property, provided that the alley shall be eight feet in the clear above the grade therein, which is substantially the same as the grade on the adjoining Plankinton property, must be affirmed. The evidence amply supports the finding that such encroachments within the limits of the alley do not affect its practical usefulness and that they do not invade the right of abutting owners. The judgment expressly determines the right of abutters to build over the alley, leaving a covered way of eight feet in the clear. This is of much weight to sustain the court's conclusions that the supports of the buildings as they have existed within the margins of the alley were deemed by the abutting owners as necessary and reasonable and so recognized in their agreements and grants in respect thereto. Under the facts and circumstances of the case the rights in controversy between the parties are governed by the principles declared in the case of *Dyer v. Walker,* 99 Wis. 404, 75 N. W. 79, and the cases in this court there referred to. As stated in the syllabus of the case it was there held:

"The owner of a right of way across the land of another, whether it was acquired by grant or by prescription, is entitled only to a reasonable and usual enjoyment thereof, in view of all the circumstances of the case and of the use then and theretofore made of the premises affected by it, and the owner of the soil is entitled to all the rights and benefits of ownership consistent with the easement."

The determination in the judgment that *Wehr* "is entitled to have such passageway opened and made practicable" involves an inquiry into the use of the alley as it had

theretofore existed in relation to the structures abutting thereon and the natural slope of the ground from West Water street to the river. The court found "that the level of the alley on Plankinton's forty-one feet at the time of the Plankinton-Wehr agreement in 1887 was, and ever since has been, the same substantially as it is now." The weight of the evidence preponderates in favor of this conclusion and hence the finding must stand. This fact establishes the right of the successors of Plankinton to use the space over the alley except the eight feet in the clear from the surface of this grade, and hence the original grade over this property cannot be varied. Any variation of this grade would violate the right confirmed in the Plankinton-Wehr agreement. Under this condition the slope, from the west line of the Plankinton property to West Water street to make the passageway "practicable" as directed in the judgment, had to be ascertained in the light of the adjudication in the judgment that "Wehr is entitled to have such passageway opened and made practicable." An inspection of the location and length of the alley between the street and the Plankinton property, in the light of the grade and the uses to which the alley was and is to be devoted, shows clearly that the grade established in the court's order meets these terms and conditions of the judgment. We are of the opinion that the order of the court correctly interprets the judgment, that the width of the alley established thereby is not unlawfully encroached upon by the structures on the abutting property, and that the grade of the alley as fixed in the order meets the calls of the judgment directing it to be "opened and made practicable."

The direction obligating "the *Gimbels*" to maintain such gates, if any, in the east and west ends of their property to close the alley, which must not interfere with the use of the alley by others, is not seriously contested and will no doubt be properly complied with.

*By the Court.*—The orders appealed from are affirmed on

both appeals, and the cause remanded for further proceedings according to law. No costs are allowed to either party. The appellant *Henry Wehr* to pay the clerk's fees in this court.

ESCHWEILER, J., took no part.