Argued October 6, affirmed October 8, 1952

# RECALL BENNETT COMMITTEE *v.* BENNETT, GIBSON ET AL.

249 P. 2d 479

302

*Leo Levenson* and *Arthur M. Dibble,* of Portland, argued the cause and filed a brief for appellant.

*Duane Vergeer,* of Portland, argued the cause for respondents. On the brief were Vergeer & Samuels and Charles S. Crookham, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

BRAND, C. J.

This is a suit for a declaratory judgment commenced by the "Recall Bennett Committee" by and through Dave Goldman, and by Dave Goldman individually, as plaintiffs. The defendants are J. E. Bennett and the following public officers: Will Gibson, City Auditor of the city of Portland; James Gleason, Registrar of Elections of Multnomah county; and Guy H. Pace, County Clerk of Clackamas county. Plaintiffs seek a declaration that the name of the defendant Bennett should not be placed upon the ballot for the purpose of seeking re-election on November 4 and that he is not qualified to serve the balance of the unexpired term of the office from which he was ousted by recall "and/or resignation followed by said recall." The complaint also seeks injunctions against the defendants in their official capacity to restrain them from placing the name of the defendant Bennett on the ballot for the November 4 election. The facts relating to the merits of the controversy are not in dispute. The defendant Bennett was elected to and held Position No. 2 as a commissioner of the city of Port-

land, his term of office extending from January 1951 to January 1955. On 16 May 1952 an election was duly called and held within the city of Portland to determine whether the voters would recall the defendant Bennett from said office held by him. At said election the majority of the votes were in favor of the recall. On the day following the election the defendant Bennett tendered his resignation to the city council, which resignation was accepted on 20 May 1952. On 23 May the results of the recall election were formally declared and certified. On 28 May 1952 the council appointed Nathan A. Boody to fill the vacancy created by the resignation and recall of the defendent Bennett. On 26 August petitions were filed with the defendant Gibson for the purpose of procuring the placement of the name of the defendant Bennett upon the ballot for the election to be held on 4 November 1952 as a candidate for election to fill the vacancy in Position No. 2 on the city council for the balance of the term formerly held by the defendant Bennett, that is to say, until January 1955. It is the contention of the plaintiffs that the defendant Bennett is, by virtue of his recall from office, barred from seeking re-election to the identical position rendered vacant by his recall and that he is disqualified as a matter of law from holding said position for the balance of the term from which he was removed. The nominating petitions are such as would require the defendant public officials to place the name of the defendant Bennett upon the ballot unless by reason of the recall he is disqualified from becoming a candidate for, or being elected to, said position. Defendant Gibson, as city auditor, has certified the name of the defendant Bennett to the county clerk of Multnomah county and to the county clerk of Clackamas county on 28 August 1952. The defendant Gibson prays for a decree dis-

missing plaintiffs' complaint. The defendant Gleason, as Registrar of Elections, received the name of the defendant Bennett as that of a candidate entitled to have his name appear on the ballot for election to Position No. 2 and states that unless restrained by the court he will cause the name of the defendant Bennett to be placed upon the ballot and submitted to the voters. He declares himself uncertain as to the rights and status of the defendant Bennett and prays for a declaratory judgment concerning his duty under the law. The defendant Pace, who is county clerk of Clackamas county wherein a portion of the city of Portland is located, admits the allegations of fact in the plaintiffs' complaint and joins in a prayer for a declaratory judgment. The defendant Bennett, on the basis of admitted facts, prays for a declaratory judgment to the effect that he is entitled to be a candidate for the office of commissioner in Position No. 2 for said unexpired term and that he is eligible for election. The trial court allowed a motion for dismissal as·to the defendant Will Gibson upon the ground that as to him the controversy is moot. All of the other parties to the controversy moved for judgment on the pleadings. The decree declares that the defendant Bennett "is disqualified from seeking reelection to the position vacancy resulting from, and created by, said recall", and that such disqualification continues for the duration of the term of office for which he was elected and which terminates on 1 January 1955. The other defendants were enjoined from placing the name of the defendant Bennett upon the ballot for the November election and the defendant Bennett was enjoined from seeking re-election to the office for the term from which he was recalled.

Before entering upon the merits of the controversy we must consider certain procedural issues raised by

the defendant. In his brief the defendant Bennett makes two contentions; first, that a declaration of rights cannot be had prior to election; and second, that the complaint does not contain sufficient facts showing a present justiciable controversy and that the court therefore did not have jurisdiction. Upon the first issue the defendant cites one case only, *Dietz v. Zimmer,* 231 Ky 546, 21 SW2d 999. As will later appear, that case is distinguishable. The action was brought by residents, taxpayers and electors, seeking a declaration that certain candidates for election were disqualified by reason of violations of the Corrupt Practices Act. The defendants were nominees at a previous primary election. The circuit court sustained a demurrer to the complaint and entered judgment. On appeal, the judgment for defendants was affirmed. The court refused to consider the guilt or innocence of the defendants, which would have raised issues of alleged criminality. It cited the provisions of the Declaratory Judgments Act which are the same as those appearing in the Oregon statute and which reads as follows:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree." OCLA, § 6-601.

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or

validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." OCLA, § 6-602.

"The enumeration in sections 6-601—6-604 does not limit or restrict the exercise of the general powers conferred in section 6-601, in any proceedings where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." OCLA, § 6-605.

The court said:

"The appellants are not interested or concerned in anything embraced within those provisions of the statute. Their rights are not affected by any ordinance, regulation, or statute. They are not concerned with the title to any property, office, status, or relation. They present no actual justiciable controversy with respect to any rights of theirs, *nor have they any duties to perform respecting which the direction of the court is desired or required.* The appellants seek merely a declaration of disqualification of the named defendants and have failed to bring the case within any of the terms of the statute upon which the case is predicated. In the absence of a justiciable controversy requiring a declaration of the rights of the plaintiffs, or a *definition of their duties, in respect thereof,* the court has no jurisdiction to enter a binding judgment. * * *" (Italics ours.)

It was held that the action would not lie. It will be observed that the court carefully guarded its decision by pointing out the absence of any duties on the part of the plaintiffs, the existence of which might place them within the confines of a controversy with the defendants. In other words, the plaintiffs were not public officers seeking a determination as to their duties relative to the election of the defendants.

■ We turn now to the defendant's second contention as above set forth, since his first point is embraced in the second. The general rule established by judicial decision is that a suit or action for a declaratory judgment will not lie unless there is an actual controversy existing between adverse parties. *Oregon Creamery Manufacturers Association v. White,* 159 Or 99, 78 P2d 572; *Hickey v. City of Portland,* 165 Or 594, 109 P2d 594. It remains to be determined whether there was such a controversy in the pending case. In *Webb v. Clatsop County School District No. 3,* 188 Or 324, 215 P2d 368, this court held that a justiciable controversy existed when voters sued members of a district boundary board to test the validity of a school election. It is argued that no justiciable controversy exists because the defendant Bennett may not be elected and will therefore have no duties to perform. It is therefore said that the litigation is premature. Our attention has been directed to 16 Am Jur, Declaratory Judgments, sections 18 and 19, pages 292-293 which relates to the refusal of courts to declare future rights where the interest of the party is merely contingent. But the immediate issue in the pending case relates to matters which precede the date of election and relate to present rights. The question is whether his status is such as to entitle him to have his name placed upon the ballot. This presents an immediate issue as to which there is no contingency. If the defendant, by reason of the recall, has become ineligible to become a candidate, we would suppose that such ineligibility affected his legal rights and established a legal status and therefore that the power of the court to declare rights, status and other relations would exist. OCLA, § 6-601. Such rights and status are certainly affected by relevant

statutes and provisions of the municipal charter. OCLA, § 6-602.

In *Wingate v. Flynn,* 249 NY Supp 351, the plaintiff was elected to office in November 1925. On the same day amendments to the New York constitution were adopted relative to the term of the office in question. The statute directed the defendant secretary of state, before each general election, to issue a certificate stating "each officer * * * who lawfully may be voted for at such election". The question was whether the plaintiff was one who could be voted for at the November 1931 election, the plaintiff's position being that he had been elected for only six years and therefore could be a candidate at the 1931 election. The complaint alleged and answer admitted that the defendant did not intend to certify that the plaintiff was one who could be voted for at the 1931 election, the claim of the defendant being that plaintiff was elected for 14 years or until January 1940. Plaintiff asked for a judgment declaring whether he was elected for six or for 14 years and whether it was the duty of the defendant to certify the plaintiff as a candidate at the 1931 election. The court held that an actual controversy exists and said:

"* * * This is a situation where the jurisdiction of the court to declare the rights of the parties is of real advantage to the litigants, and from a practical standpoint the court should assume jurisdiction. Future confusion and possible litigation will be avoided by a present determination of the question here involved. Public officers should have the right to have their legal duties judicially determined. In this way only can the disastrous results of well-intentioned but illegal acts be avoided with certainty."

It was held that the plaintiff was elected for six years. The case was unanimously affirmed by the Appellate

Division, 250 NYS 917 and by the Court of Appeals, 256 NY 690, 177 NE 195.

In *Progressive Party v. Flynn,* 400 Ill 102, 79 NE2d 516, the Progressive Party and others sought a declaratory judgment against the election board to the effect that the party was entitled to participate in the primary election immediately following the nomination of officers. The defendant secretary of state denied the right of the party to participate and contended that there was no jurisdiction because a purely political question could not be adjudicated by a declaratory judgment. The court said:

"The appellee Secretary of State contends that this court lacks jurisdiction because a purely political question cannot be adjudiciated by a declaratory judgment, and cites Daly v. County of Madison, 378 Ill. 357, 38 N. E.2d 160, and Fletcher v. City of Paris, 377 Ill. 89, 35 N. E.2d 329, as supporting the principle that equity may not restrain an unlawful election, even though there is no other way in which taxpayers' property rights and public funds may be protected. The question arises, however, whether a declaratory judgment is an equitable proceeding restraining an election. It seems that an application for a declaratory judgment is neither a proceeding at law nor in equity but the application in this case is somewhat similar to an election contest, and may be designated as sui generis, as election contests have been designated (McKinley v. McIntyre, 360 Ill. 382, 196 N.E. 506), and like proceedings for contempt in tampering with ballot boxes. People ex rel. Rusch v. Fusco, 397 Ill. 468, 74 N.E.2d 531. An order declaring rights under the declaratory judgment law is not compelling in itself, but is merely a declaration of rights.

\* \* \* \* \*

"The counterclaim filed by certain appellees asking for a declaration of rights on the same stat-

ute involved in appellants' application is an admission by them that an 'actual controversy' is involved as required by section 57-½ of the Civil Practice Act. Appellee Barrett's request that in the event his motion was denied he be permitted to join his coappellees in their brief brings him into the same position as the other appellees. Furthermore, any question as to the existence of an actual controversy has not been briefed or argued by any of counsel."

It was held that the court had jurisdiction to declare rights.

In *Daugherty v. Town of Mabscott,* 131 W Va 500, 48 SE2d 342, plaintiffs brought an action under the Declaratory Judgment statute and alleged that they were elected to specified municipal offices and had taken oath of office within 20 days after declaration of the result of the election but that the incumbents refused to turn over the offices to the plaintiffs upon the ground that they had forfeited their rights by failure to take oath of office within 20 days after the election. The circuit court overruled a demurrer to the complaint and certified to the Court of Appeals the question as to whether the complaint stated a cause of action. The court held that the action for declaratory judgment would lie and that the plaintiffs were entitled to the office.

■ From Borchard, Declaratory Judgments, Second Edition, page 872, we quote:

"Questions have been raised by declaration concerning the technical requirements for the conduct of an election or the counting of the ballots. Those who wish protection during the conduct of an election may seek judicial aid to declare invalid a proposed procedure of election officials or may seek a declaration of their duty to perform certain tasks. The outcome of an election may involve questions

of statutory construction as to the basis upon which votes are to be counted or the disallowance of challenged ballots. For example, the effort of certain nominees for state offices to obtain, before the election, a construction of certain statutes governing the number, the duties and the appointers of challengers at the polls in a prospective election was successful. The duty of the fiscal authority in Kentucky to furnish ballot boxes at a primary election involved a construction of conflicting statutes which left it doubtful whether a separate box had to be supplied for each party or whether one box sufficed. * * *''

■ The defendant Bennett places reliance upon the case of *Marsden v. Harlocker*, 48 Or 90, 85 P 328. The case is cited for the proposition that:

"Equity will not intervene when an adequate remedy is afforded at law, and hence, [in] controversies involving the right to an office an injunction will not usually lie, because the parties have a complete remedy by statute to contest an election or by quo warranto to determine the right resulting therefrom."

The Marsden case was decided twenty years before the Declaratory Judgments Act was adopted. Furthermore, quo warranto would not be an adequate remedy in the case at bar. As we shall show, the defendant Gleason was entitled to an adjudication concerning his duties. It can scarcely be said that Bennett would have an adequate remedy if he were permitted to place his name on the ballot, spend time and money in an effort to be elected, and then, if the vote favored him, be subjected to a belated adjudication that he never had a right to run for the office. Neither quo warranto nor the statutory procedure authorized by OCLA, § 81-1901 can be said to furnish a remedy as prompt and adequate as that afforded by the Declaratory Judgments Act,

which act is remedial and must be liberally construed. Our statute provides:

"This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." OCLA, § 6-612.

The provisions of OCLA, §§ 81-1901 and 81-2546 constitute statutory procedures additional to quo warranto, whereby the validity of an election previously held may be tested. Neither statute deals with the question which confronts us here, namely, the status of a would-be candidate, his right to have his name on a ballot and the duty of a public officer to place it there. *McGinnis v. Cossar*, 230 Ky 213, 18 SW2d 988 and *Purdom v. Hays*, 260 Ky 82, 83 SW2d 846, strongly support the proposition that a court may render a declaratory judgment for the purpose of determining the eligibility of a candidate before an election is held. The McGinnis case was decided before *Deitz v. Zimmer*, supra. *Purdom v. Hays* was decided long after the decision of *Deitz v. Zimmer*. All three cases come from the Court of Appeals of Kentucky. No reference was made in *Deitz v. Zimmer* to the McGinnis case and neither the Deitz nor the McGinnis cases are mentioned in *Purdom v. Hays*. Obviously the cases were not considered to be in conflict.

In *State ex rel. Ekern v. Dammann*, 215 Wis 394, 254 NW 759, the plaintiff filed a complaint under the Declaratory Judgment Act against the secretary of state. The complaint alleged that the plaintiffs had taken steps for the formation of a new political party and that it was the duty of the secretary of state to file nomination papers for candidates and to file petitions for new political parties and to prepare official

ballots. It was further alleged that the defendant had prepared rulings which erroneously would deprive citizens of the right to form a new political party and to elect officers. The Supreme Court of Wisconsin said:

"The first question involved is whether the petition discloses a justiciable controversy. It is the rule, too well established to warrant extended discussion, that this court will not entertain an action for declaratory relief in the absence of a genuine controversy. Heller v. Shapiro, 280 Wis. 310, 242 N.W. 174, 87 A.L.R. 1201; Village of Sun Prarie v. Wisconsin Power & Light Co. (Wis.) 251 N.W. 605; In re Breidenbach (Wis.) 252 N.W. 366. The question in this case is whether the action for declaratory relief is not premature. Since the secretary of state has been asked to perform no official duty with respect to giving the new political party a separate ballot, it may be contended that there is at present no controversy in any such sense as the declaratory judgments law contemplates; that the relief asked is simply an advisory opinion based upon the hypothesis that the party is formed, seeks to qualify at the general election of 1934, and is refused such right by the defendant. The matter is not free from difficulty, but we have concluded that it sufficiently appears from the petition that there is a determination upon the part of the group seeking declaratory relief to form a new political party, and that in response to a request for an official ruling, this defendant has indicated that he will make such rulings as will render the organization ineffective, at least in so far as opportunity to support its candidates at the 1934 fall election is concerned. In view of the decision to form such a party and the ruling of the defendant, it must be held that a controversy exists. This is especially true in view of the subject-matter of this action. It deals with the electoral franchise and with the rights of citizens to express their political opinions through the

medium of a political party. *It goes without saying that the term 'controversy,' as applied to the rights of the great mass of citizens, must receive a somewhat more liberal definition than when applied to the ordinary relations of individuals with each other.* The right of a large body of citizens holding similar political views to so organize as to make these views effective is an important one. Where there exists a genuine determination so to organize, and a threatened obstacle to the accomplishment of this purpose in the form of an official ruling, a controversy exists. To hold otherwise would require the group to go to the expense and labor incident to organization, with no assurance that any of these steps would be presently effective. We conclude, therefore, that the petition discloses a justiciable controversy, and that it may be proper to entertain the action so far as the declaratory judgments law is concerned. * * *'' (Italics ours.)

In 1 Anderson, Declaratory Judgments, the author states the rule concerning matters of public interest with even greater liberality. We quote:

"The rule that the court will not consider a case in the absence of a justiciable, actual, or bona fide controversy as discussed in the next preceding section, is subject to the exception in cases wherein the question involved is of great public interest. Then the rule requiring the existence of a justiciable controversy is not followed, or is relaxed. It seems that the courts have assumed that they possess inherent power to give a declaratory judgment as to matters of public concern." 1 Anderson, Declaratory Judgments, § 63, p. 126.

In *Terry v. Adams,* 90 F Supp 595, the plaintiffs who were negro citizens and voters sought a declaratory judgment to the effect that they were entitled to vote at certain elections, the defendants being representatives of the governing body of the "Jaybird

Party." It was held that a suit for a declaratory judgment would lie and the plaintiffs prevailed. See *Sheils v. Flynn,* 297 NY Supp 705.

In *Kelly v. Woodlee,* 175 Tenn 181, 133 SW2d 473, the plaintiff sought a declaration that he was the lawful holder of an office and that the defendant claims title to this office under an appointment. The court took jurisdiction and adjudicated the rights of the parties. We think it sufficiently appears from the authorities that cases may arise in which it is proper to invoke the jurisdiction of the court under the declaratory judgment statute in so-called political cases and that declarations may be made prior to an election. We join in liberal interpretation in such cases. *Friendly v. Olcott,* 61 Or 580, 123 P 53, cited by defendant Bennett, was decided 15 years before the declaratory judgment statute was passed.

██ It is contended in this court that the complaint states only that the plaintiff Goldman is a citizen and resident and taxpayer within the municipality and fails to state that he is a legal voter. It is therefore contended that the complaint is deficient. No demurrer was filed to the complaint and it does not appear that the issue was raised in the lower court nor was it suggested to the lower court that the plaintiff was not the real party in interest. We agree that at most, it appears only by inference, that the plaintiff has any rights or interest adverse to the position of the defendant. It must also be stated that the complaint appears to be defective in that it fails to specifically set forth any contention of the defendant. Plaintiff alleges that the defendant is ineligible for the reasons stated. He then says that petitions for election were filed "by or on behalf of the defendant Bennett." We are left, therefore, to infer what apparently everyone knows,

that Bennett contends he is eligible to election. By his answer the defendant Bennett sets forth his contention that he is eligible and the defendant Gleason alleges that the city auditor has certified the name of defendant Bennett as that of a candidate entitled to have his name appear on the ballot and that the plaintiff contends that Bennett is not so entitled. He alleges further that in view of the controversy he is uncertain as to the rights and status of the said defendant Bennett as a candidate for said office and as to the rights and duties of the defendant Gleason under the election laws. He therefore prays the court for a declaration of rights as to Bennett and a declaration of duties as to himself. All of the parties stipulated to the facts and in effect entered into a submission of the cause. We quote the following from 1 Anderson, Declaratory Judgments, section 304, page 706:

"Where the plaintiff's pleading, admittedly, is not as broad and specific as it might have been, but the defendants, instead of attacking the plaintiff's pleading, entered their appearance, and filed an answer, in which they set up their defenses, and sought to justify their conduct, and then stipulated the essential facts and in effect entered into a submission of the cause upon the theories of the respective parties without objection, and having done so they are bound by the judgment entered to the same extent as if the pleadings had been full and ample.

"In other words where an action for a declaratory judgment is submitted upon a stipulation that completely covers the case, then the matter of pleadings becomes immaterial, and the fact that the pleadings contain no allegation upon a certain issue involved, will not be considered. * * *"

See *Cobb v. Harrington*, 144 Tex 360, 190 SW2d 709, 172 ALR 837.

■ In substance, if not in form, the defendant Gleason has raised a justiciable controversy with the defendant Bennett by his cross-complaint seeking declaratory relief. From 16 Am Jur, Declaratory Judgments, section 65, page 336, we quote the following:

"Declarations may be made as to questions raised by a cross complaint or counterclaim. Thus, in an action to restrain the defendant from interfering with the plaintiffs' use of an alleged highway where the defendant filed a cross complaint asking for a declaratory judgment as to whether the plaintiffs had any right to use any of the land, it was held proper for the court to declare upon the basis of the cross complaint that the defendant had a right to use the right of way and that the judgment so rendered was not open to the objection that it was not supported by the pleadings. Likewise, upon the raising of a question as to whether the plaintiff had a cause of action in a proceeding brought by a school district against one claiming to have been employed by it under a valid contract for a declaration to the effect that no such contract existed, where the defendant counterclaimed and asserted his rights under the contract, to which counterclaim the plaintiff did not demur or in any manner object, the defendant was held entitled to a trial of the issues thereby made, and a judgment against the defendant on his counterclaim was a complete adjudication of the rights of the parties."

■ In *Tolle v. Struve*, 124 Cal App 263, 12 P2d 61, the court held in substance that:

"The existence of an 'actual controversy relating to the legal rights and duties of the respective parties,' made by statute a condition of the right to declaratory relief, is shown by a pleading which states facts from which it is manifest that there is such a controversy, though the plaintiff does not allege that it exists." Annotation: 87 ALR 1246.

Again we quote from a recent work:

"In declaratory judgment actions where there is a defective allegation in the plaintiff's pleading for declaratory relief, the defendant, by a cross action or other pleading, may supply and cure such imperfection in the plaintiff's allegation.

"Allegations of a complaint, which was filed under the declaratory judgment act, which were admitted by an answer and cross-complaint would be read into the cross-complaint and considered with affirmative allegations of cross-complaint made a basis for relief, and doubtful intendments would be resolved against the pleader.

\* \* \* \* \*

"So, whether a complaint for a declaratory judgment states a cause of action is immaterial, where the defendant interposed a cross pleading tendering the same issues and a judgment thereon constitutes a complete adjudication of the rights of the parties since the defendant by tendering such counterclaim or cross-complaint became a plaintiff in effect and invoked the jurisdiction of the court and submitted to it." 1 Anderson, Declaratory Judgments, § 306, p 707.

"The trial court should have some discretion in passing upon the matter of whether or not cross-complaint will be permitted in a declaratory action, and that its disposition of such matter should not be disturbed on appeal unless it clearly appears that the trial court has abused the discretion so reposed in it.

"It may be generally stated, that a declaratory judgment is obtainable in response to the prayer in a cross-action or on a cross-complaint or a counterclaim, where, under the rules of practice in the particular action, such cross-pleading is permissible. In other words, if the subject matter of the declaratory judgment, in a cross-complaint, is of such nature and character that if the analogous relief were sought in an executory action by a cross-complaint it would be allowed in a declaratory judg-

ment action. Indeed, the granting of declaratory relief on a counterclaim, cross-complaint, or cross-action or cross-pleading, is now recognized as common practice.'' 1 Anderson, Declaratory Judgments, § 313, p 724.

The position of the defendant Gleason sufficiently appears to be adverse to that of the defendant Bennett. In *Klein v. Jefferson County Building & Loan Ass'n*, 239 Ala 460, 195 So 593, the plaintiff, a stockholder in the defendant corporation, brought suit against it for a declaratory judgment. The company proposed to organize under the Savings and Loan Act. It was alleged by the plaintiff that if the act is unconstitutional, great confusion, expense and clouds on titles would result. Plaintiff then expressed ''grave doubt'' of the constitutionality of the Savings and Loan Act. The court said:

"No question as to a justiciable issue being presented by the record was raised by either party. Without question this court, of its own motion, should determine any question of jurisdiction.

"One of the most useful fields for the Declaratory Judgment Act is to settle questions touching the constitutionality of statutes. The consequences of proceeding under void enactments is thus avoided.

"When one party is proceeding under the statute and the other has property rights which will be gravely affected by such proceeding, and the parties have a bona fide divergence of opinion as to the constitutionality of the Act, a justiciable controversy is presented. It is not a question of bold and dogmatic allegations of unconstitutionality.

"At most these are matters of opinion between litigants, or their counsel, and can add nothing to the allegations of the pleading.

"We are of opinion a justiciable issue is here presented, * * *.''

Again, in *Town of Ohio v. People,* 264 App Div 220, 35 NY Supp2d 107, the court said:

> "The objective of the declaratory judgment in our practice is to obtain relief from just such uncertainty and doubt. It aims to enable a party whose rights, privileges and powers are endangered, threatened or placed in uncertainty to invoke the aid of the court to obtain a declaration of his rights or legal relations. * * *" Citing cases.

In the case at bar it is unnecessary to decide whether a private party sufficiently shows his adversary and then expressing "grave doubt" as to the validity of that contention. In the pending case a public officer, Gleason, is charged by statute with certain duties. A dispute has arisen between others as to the nature of his duty. Is he to place a name on the ballot or not? He must obey the law. He must make a quick decision. He is reasonably in doubt as to how he should act. As a public officer he belongs to a class which is peculiarly entitled to judicial guidance, for, as said in *Wingate v. Flynn,* supra, "Public officers should have the right to have their legal duties judicially determined. In this way only can the disastrous results of well-intentioned but illegal acts be avoided with certainty." As said in *Cobb v. Harrington,* supra, 144 Tex 360, 190 SW2d 709:

> "* * * the action for declaratory judgment 'is an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities'."

And see *Ex parte County Board of Education,* 260 Ky 246, 84 SW2d 59.

We hold that the court had jurisdiction to declare the rights of Bennett and the duty of Gleason. We do not hold that the assumption of jurisdiction was

mandatory. In this connection we quote from Borchard as follows:

"Reference will hereafter be made to the fact that the court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration. In some of these cases, discussed in a previous chapter, the declaration is refused on jurisdictional grounds. In others, the refusal is justified on discretionary grounds. As already observed, however, it is wrong for courts to decline a declaration on the mere ground that another remedy was available, for declaratory relief was not intended to be exclusive or extraordinary, but alternative and optional. It is only where the court believes that *more* effective relief can and should be obtained by another procedure and that for that reason a declaration will not serve a useful purpose, that it is justified in refusing a declaration because of the availability of another remedy.

\* \* \* \* \*

"The declaration will be refused where in the court's opinion it is inexpedient, for some reason outside the record, such as public policy, or where the question might be raised again in some other way or where it would be embarrassing in the operations of government. \* \* \*'' Borchard, Declaratory Judgments, 2d ed, pp 302-304.

■■ In exercising its judicial discretion as to the assumption of jurisdiction, the trial court was entitled to consider the fact that other, though less expeditious remedies might after election become available to test the rights of the defendant Bennett to hold office. It was entitled to consider the fact that the litigation

must necessarily disrupt orderly election procedures by reason of the shortness of the time between the filing of the suit and the time at which the ballots must be printed. The court was also entitled to consider the obvious fact that the shortness of available time would render difficult, if not impossible, the orderly and regular presentation of the issues by counsel and the deliberate consideration of those issues by the courts. On the other hand, the trial court was entitled to consider the bearing of the public interest upon the question of assumption of jurisdiction. If the court should refuse jurisdiction at this time, and the defendant Bennett should win election at the polls, and if then, statutory procedure or the remedy of quo warranto should be successfully invoked to oust him of office, the result would be the practical disfranchisement of all of the voters whose ballots were cast for the defendant Bennett. They would have been deprived of their clear right to choose between other candidates who were qualified. A decision adverse to Bennett and rendered subsequent to his purported election might also throw into confusion, which could be removed only by litigation, the question as to whether the next highest candidate was elected or whether a new election had become necessary. We hold that the trial court properly assumed jurisdiction.

■ We come to the merits. We consider it unnecessary to quote the various provisions concerning the recall of public officers. It is sufficient to say that the recall provisions of the Oregon constitution, Article II, § 18, have been adopted in the charter of the city of Portland. Charter, Article 2, section 3-201. The general provisions as to the "required qualifications" for an office to be filled by reason of a vacancy are not

relevant to the question of the eligibility of a recalled commissioner to run for the balance of the term to which he was elected and from which he was recalled.

 At the general election to be held on 4 November 1952 a commissioner is to be elected to fill out the unexpired term to which the defendant Bennett was elected and from which he was recalled. The questions for decision are as follows: What were the essential characteristics of the office to which Bennett was elected? What was his tenure therein and what was the legal effect of his ouster by vote of the people? The fact that Bennett resigned on the day after the recall election but before the vote was officially canvassed is immaterial. *State v. Rose,* 74 Kan 262, 86 P 296. Public office has been defined as follows:

> "In general, the term 'public office' embraces the ideas of tenure, duration, emolument, powers, and duties; and it has been defined as a public station or employment conferred by the appointment of government, or the right, authority, and duty created and conferred by law, by which for a given period an individual is invested with part of the sovereign functions of the government." 67 CJS, Officers, § 2, p 97.

The term of office is:

> " 'Term of office' is generally the fixed period of time for which the office may be held, and 'term of office' is not synonymous with 'tenure.' " 67 CJS, Officers, § 42, p 195.

Counsel for the defendant quote from American Jurisprudence as follows:

> " 'But the question here is whether the suspension or removal of itself operates to disqualify one from holding the same or another office. Undoubtedly, the framers of the law can attach such ineligibility to suspension or removal from office.

But where they have not done so, where there is no constitutional or statutory declaration of ineligibility for such cause, the Courts may not impose the disability.' "

We shall assume that by inadvertence they neglected to quote the balance of the paragraph which reads as follows:

"* * * The cases, with some exceptions, hold that a removal from office bars the removed officer from an election or appointment to fill the vacancy for the unexpired term, but that it does not disqualify him to take some other office or to be elected or appointed to a new term of the same office. Hence, a judgment of ouster may not preclude the offender from entering on a succeeding term to which he had been elected before the judgment was entered. These principles apply likewise in cases in which a public officer anticipates his removal for crime or misconduct in office by first tendering his resignation. Even if it is accepted, he is not thereby rendered eligible for election to the vacancy for the balance of the term caused by his resignation to escape expulsion." 42 Am Jur 925, Public Officers, § 57

In *State v. Rose,* supra, the defendant was elected mayor for a term of two years ending on 12 April 1907. In September 1905 an action was brought to remove him from office for misconduct. In a civil proceeding the court ousted him from office and decreed his ineligibility for the remainder of his term. Shortly thereafter Rose became a candidate at an election held to fill the vacancy. He was elected and assumed the office. Contempt proceedings were then instituted for violation of the ouster decree. The statute pursuant to which the defendant was removed from office provided that "for a failure or neglect of official duty in the enforcement of this act, any of

the city or county officers herein referred to may be removed by civil action." Gen Stat Kan 1901, § 2462. There was no statutory provision concerning the eligibility of the defendant following his removal. It was held that the defendant was guilty of contempt. After citing many cases the court said:

"* * * The violations of law by the officer are not only public offenses, but in committing them he forfeits his right to the office, and this forfeiture may be judicially declared in a quo warranto proceeding. The judgment cannot be deemed to be invalid because of the resignation of Rose just before the rendition of the judgment. * * * The public had an interest in the action, and the judgment to be rendered was of no less consequence to it than to the individual interests of the defendant. * * *

"* * * The right to exercise the functions of the office of mayor and to enjoy its privileges for the two-year term was an entity conferred on the defendant, and it was that which was taken from him in the quo warranto proceeding. * * * The electors of the city are as much bound by the law and the judgment rendered in pursuance of the law as their representatives and officers, and the special election did not warrant the defendant in ignoring or violating the judgment rendered under the law. * * *"

The court cited with approval *State ex rel. v. Dart,* 57 Minn 261, 59 NW 190, which concerned the case of an officer who was removed from office and then reappointed to fill out his term. The opinion in the Rose case continued:

"* * * No room is seen for a distinction between an appointment and an election. The protection of the public is involved in the proceeding and judgment. Nothing in the statute suggests that electors, even, can condone the misfeasance, revive

the forfeited rights, or limit the effect or enforcement of a judgment of ouster. * * *''

In *Day v. Sharp,* 128 Tenn 340, 161 SW 994, the defendant had been found ineligible to hold a county office. Thereafter the county court elected him to the same office. The court reviewed earlier cases and held the defendant ineligible. The court said:

"In our opinion this question involves a consideration of what is the meaning of the word 'office' used in the Constitution and statute. The word has been held, in such connection, to imply the right to exercise the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place for the term prescribed by law. * * *''

It was held that the defendant was not eligible to hold the remnant of his original term. The ouster statute in that case provided that if the defendant be found guilty judgment of ouster shall be rendered. The proceedings were civil in nature and there was no statutory provision concerning eligibility after ouster.

In *State v. Crump,* 134 Tenn 121, 183 SW 505, the cases were again reviewed at length. The court said:

"So when one is removed from an office, he is removed for the current term, and he cannot thereafter be re-elected to that term. This is so because the term is part of the office.

"Accordingly, when defendants were removed from the offices of mayor and vice mayor, they were deprived of the right to exercise certain functions and receive certain compensation, and they were deprived of that right for their terms then current. A removal from office extends to the limit of the current term, but such removal, unless a statute give it greater effect, cannot go beyond the current term because the office itself is limited by the term.

If we go beyond the current term, then we have to deal with another office.''

See also *People v. Ahearn*, 196 NY 221, 89 NE 930; *In re Advisory Opinion to the Governor*, 31 Fla 1, 12 So 114, 18 LRA 594.

██ As we have indicated, the city charter provides for the exercise of the recall in the manner provided by the constitution and general laws of the state and the ordinances of the city. The Oregon constitution, Article II, § 18, provides that every public officer is subject to recall. From that section we quote: ''If an officer is recalled from any public office * * *.'' In harmony with the cited cases we hold that a public office is an entity and that the duration of the term of office is a part of the entity. If he is ousted from the office he is ousted from the term to which he was elected. The grounds on which ouster is based have no bearing upon the extent of the ouster. The office was for a full term of years. The disqualification is for the same period. Under the constitution the people are authorized to remove by recall any public officer for reasons set forth in the recall petition and printed on the sample ballots. These reasons may or may not charge malfeasance in office. In the case at bar the record fails to show what reasons were set forth in the recall petition. But recall by the electors for reasons specified in the petition is no less effective as an ouster than is a removal by judgment of a court for reasons specified in a civil complaint. In the one case the ouster is by judicial decision pursuant to statute enacted by the people or their representatives; in the other it is an ouster by the sovereign people themselves under rights confirmed by the constitution. Any other conclusion might nullify the expressed will of a

majority of the electors in a matter touching their sovereign rights.

■ We hold that the defendant Bennett is not qualified to become a candidate for election to the unexpired term of the office from which he was recalled. By reason of his disqualification, his election, if an election were to be held, would be void. 67 CJS 155, Officers, § 26.

The injunction against the defendant Gleason was properly issued and the decree of the circuit court is affirmed. No party will recover costs.