BOERSCHINGER and others, Plaintiffs, v. ELKAY ENTERPRISES, INC., and others, Defendants. [Three appeals.] *

*November 24, 1964—January 5, 1965.*

[6] *C. Hennecke Co. v. Cardinal Boiler. & Welding Corp.* (1962), 16 Wis. (2d) 493, 114 N. W. (2d) 869; *Estate of Larsen* (1959), 7 Wis. (2d) 263, 96 N. W. (2d) 489.

* Motion for rehearing denied, without costs, on March 2, 1965.

For the plaintiffs there was a brief by *Kaftan, Kaftan &* *Kaftan* and *Robert P. Stebbins,* all of Green Bay, and oral argument by *Mr. Arthur Kaftan* and *Mr. Stebbins.*

For the defendants Elkay Enterprises, Inc., Packerland Packing Company, Inc., and Frank O. Zeise Construction Company, Inc., there were briefs by *Berk & Pressentin* of Green Bay, and oral argument by *Bernard Berk.*

For the defendants Ted J. Denissen, Ronald Tordeur, Clarence Vanden Heuvel, and town of Bellevue, there was a brief by *Cornelisen, Denissen, Kranzush & Kuehn,* and oral argument by *David J. Condon,* all of Green Bay.

BEILFUSS, J. The principal reason stated by the trial judge in sustaining the demurrer of the municipal defendants was his opinion that the title to public office could not be tried in a declaratory-judgment action but must be by *quo warranto* by the attorney general in the name of the state.

Generally speaking, *quo warranto* is the proper and exclusive remedy to try title to office.

The plaintiffs contend that questions of title to office in this action are only ancillary to the principal cause of declaring the authority to build and operate an additional slaughterhouse and rendering plant to be invalid and as such can be tried with the principal cause of action.

Our first question is whether an action to try title to office must be brought by the attorney general or in the name of the state in *quo warranto*.

The controlling statutory sections of our *quo warranto* statute are:

"294.04 WHEN ACTION MAY BE BROUGHT. (1) An action may be brought by the attorney general in the name of the state, upon his own information or upon the complaint of any private party, against the parties offending in the following cases:

"(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state; or . . .

"(2) Such action may be brought in the name of the state by a private person on his own complaint when the attorney-general refuses to act or when the office usurped pertains to a county, town, city, village or school district."

The title to offices in question are those of town supervisor and building inspector of the town. The challenge to these offices in *quo warranto* is controlled by sub. (2) of the statute quoted. These being town offices, the action can be started by a private individual without the attorney general or his prior refusal to act. In *quo warranto* brought under the statute, however, the action must be in the name of the state.

The question still remains whether title to office can be determined by declaratory judgment where it is only ancillary to the principal cause of action in the complaint.

We have stated in several prior decisions that *quo warranto* was the exclusive remedy to try title to office. Some of the cases enunciating that principle are: *State ex rel. Lochschmidt v. Raisler* (1907), 133 Wis. 672, 114 N. W. 118; *Ekern v. McGovern* (1913), 154 Wis. 157, 142 N. W. 595; *McCarthy v. Hoan* (1936), 221 Wis. 344, 266 N. W. 916; *Joint School Dist. v. Waupaca, etc., County School Comm.* (1955), 271 Wis. 100, 72 N. W. (2d) 909.

We deem it necessary to reconsider this rule as it applies to actions such as this where title to office is ancillary to the principal dispute.

The action is brought under the Declaratory Judgments Act, sec. 269.56, Stats. Pertinent provisions of the statute are as follows:

"(1) *Scope.* Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

"(2) *Power to Construe, etc.* Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder. No party shall be denied the right to have declared the validity of any statute or municipal ordinance by virtue of the fact that he holds a license or permit under such statutes or ordinances.

". . .

"(5) *Enumeration Not Exclusive.* The enumeration in subsections (2), (3) and (4) does not limit or restrict the exercise of the general powers conferred in subsection (1) in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

". . .

"(12) *Construction.* This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

The plaintiffs, Boerschingers, seek to prevent the erection and use of a rendering plant and slaughterhouse. The corporate defendants have a building permit which authorizes the construction for that purpose. The major turning point of the entire controversy is the validity or lack of validity of the two town ordinances; one amending the zoning ordinance so as to permit the slaughterhouse and rendering plant, and the other to prohibit such building and use.

Certainly the right, status, and legal relations of the Boerschingers and the corporate defendants are affected by the conflicting ordinances. By virtue of sec. 269.56 (2), Stats., quoted above, the plaintiffs may have the question of the validity of those ordinances determined by declaratory judgment. The Boerschingers' claim of invalidity of the ordinance permitting the building and use of the buildings is not based upon title to office but other alleged irregularities. The title to office of supervisor affects only the validity of the second ordinance prohibiting the building and use and the legality of the appointment of Mr. Tordeur, building inspector, who issued the building permit.

The title to the offices of town supervisor and town building inspector are only ancillary to the main controversy, the validity of the ordinances and the building permit.

Sub. (15) of the Declaratory Judgments Act (sec. 269.56, Stats.), provides:

*"Uniformity of Interpretation.* This section shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."

Professor Borchard, a well-recognized text authority, states in Borchard on Declaratory Judgments (2d ed.), pp. 362, 363:

"Since *quo warranto* is a traditional writ of ancient lineage, an occasional court will conclude that it is the indicated method of trying title to office or the validity of an election or other public act. But most courts have readily perceived that the declaratory judgment is a vehicle of relief of equal efficacy with *quo warranto* for the determination of the rights of the parties, while having the advantage of escaping some of the restrictions of *quo warranto*, . . ."

1 Anderson, another recognized authority in Actions for Declaratory Judgments (2d ed.), p. 396, sec. 195, concludes:

"The holdings that a declaratory judgment action may be entertained without regard to the existence of another remedy, are not only sustained by the better reasons, but are more in harmony with the true spirit and purpose of the declaratory procedure."

In *Recall Bennett Comm. v. Bennett, Gibson, et al.* (1952), 196 Or. 299, 313, 314, 249 Pac. (2d) 479, the court stated:

"Neither *quo warranto* nor the statutory procedure authorized by OCLA, § 81–1901 can be said to furnish a remedy as prompt and adequate as that afforded by the Declaratory Judgments Act, which act is remedial and must be liberally construed."

Counsel for the corporate defendants in their brief filed with the court "agree with counsel for plaintiffs that a liberal interpretation of the Uniform Declaratory Judgments Act permits a determination of an officer's status in such proceeding, and that such remedy may be selected in lieu of quo warranto. After all, the only real distinction is in the caption, whether it is entitled in the individual's name or on relation of the State."

All the necessary parties to a determination of the title to office are parties plaintiff or defendant—the Boerschingers, the two persons claiming to be supervisor, the two persons

claiming to be building inspector, the individual members of the town board, and the town of Bellevue.

Without belaboring this opinion with additional citations of authority, we perceive no adequate reason why the ancillary question of title to office should not be tried in an action for declaratory judgment.

We, therefore, withdraw the language of any prior opinion that can be construed to hold that *quo warranto* is the *exclusive* remedy to try title to office where that issue is ancillary to the principal cause of action for declaratory judgment.

Both the corporate defendants and the municipal defendants contend there is a defect in parties plaintiff and defendant. We disagree. All the parties are either necessary or proper parties to the controversy. The corporate defendants have an interest in the validity of the appointment of the building inspector and the invalidity of the second ordinance. These issues to some degree are dependent on who has title to office. The individual municipal defendants, the town of Bellevue, and plaintiff supervisor have an interest in their offices, the validity of the ordinances, and the enforcement of the town zoning regulations. The plaintiffs, Boerschingers, likewise have an interest in all phases of the litigation.

Both the corporate defendants and the municipal defendants also contend that there is a misjoinder of causes of action.

Sec. 263.04, Stats., provides in part:

". . . But the causes of action so united must affect all the parties to the action and not require different places of trial, and must be stated separately."

We have determined that all of the issues stated affect all of the parties. We must now decide whether the complaint states more than one cause of action.

In *Usow v. Usow* (1933), 213 Wis. 395, 401–403, 251 N. W. 458, the problem was considered as follows:

"If a liberal construction of the complaint reasonably permits of the conclusion that it contains an equitable cause of action affecting all of the parties but in which different kinds of relief are demanded which fairly may be said to be incidental, germane, and auxiliary to that cause of action, then defendants' contentions would seem to be not well founded.

"It would be futile to review the numerous decisions of this court in which similar questions have arisen, and attempt to harmonize the holdings therein. It would be difficult, if not impossible, logically to harmonize them. Whether causes of action are improperly united in a complaint at times has been a most perplexing question. *Emerson v. Nash,* 124 Wis. 369, 102 N. W. 921; *McArthur v. Moffet,* 143 Wis. 564, 128 N. W. 445. . . .

"In *American Can Co. v. Stare,* 150 Wis. 627, 138 N. W. 67, the plaintiff therein sought foreclosure of a real-estate mortgage, sale and foreclosure of personal property pledged to him as additional security to the note, and a judgment for deficiency. It was held that the complaint contained but one cause of action. The following language, taken from the opinion in *Zinc Carbonate Co. v. First Nat. Bank,* 103 Wis. 125, 139, 79 N. W. 229, was approved:

" 'The test of whether there is more than one cause of action stated or attempted to be stated in a complaint is not whether there are different kinds of relief or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication.'

"The following cases were cited: *South Bend C. P. Co. v. George C. Cribb Co.,* 105 Wis. 443, 446, 81 N. W. 675; *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922; *Herman v. Felthousen,* 114 Wis. 423, 90 N. W. 432.

"In *State v. P. Lorillard Co.* 181 Wis. 347, 193 N. W. 613, the complaint charged a conspiracy in restraint of trade. Various kinds of relief which affected all of the parties alike, but which affected some of the parties individually, was demanded. It was there contended by the defendants, in support of their demurrers, that the complaint

contained four separate and distinct causes of action, some of which did not affect all of the parties to the action. It was there stated by Mr. Justice JONES, speaking for the court, after referring to many cases cited in the opinion:

" 'The cases we have cited indicate that when a primary right has been invaded the complaint may relate to many minor subjects, and facts may be stated constituting independent grounds for relief differing as to different defendants and still the complaint may not be subject to objection for misjoinder of causes of action.'

"In *Woelfel v. New England Mut. Life Ins. Co.* 182 Wis. 45, 195 N. W. 871, a complaint was considered which sought to cancel assignments of interests in certain life insurance payable to the assignors as beneficiaries under the policy and to recover from the insurance company the separate amounts to which the two beneficiaries were entitled. It was held that there was no misjoinder of causes of action. The court grounded its decision upon the familiar rule that 'when jurisdiction in equity is once obtained, the court will take into consideration the entire subject matter and retain such jurisdiction until all matters involved in the litigation and connected with the subject matter are finally disposed of. For this purpose the court may determine questions which otherwise would be cognizable in a court of law; for example, damages may be ascertained and awarded. This is to avoid multiplicity of actions and in order that complete justice may be done.' "

1 Anderson, Declaratory Judgments (2d ed.), 1959 Supplement, p. 227, sec. 252, states:

"A cause of action for a declaratory judgment may properly embrace in a single cause of action, claims for 'further consequential relief' which otherwise would be regarded as separate causes of action, including claim for injunctive relief, and such corollary claims may be dismissed if they do not state facts sufficient to constitute a cause of action, even though a sufficient cause for declaratory judgment be pleaded."

Upon the authority of these citations, we conclude that the complaint states but one primary right, namely, the legality of the authority for the construction and use of the

building for slaughterhouse and rendering plant. The claims which may become issues are all ancillary or auxiliary to the alleged primary right and may be stated as one cause of action.[1]

The corporate defendants contend that no cause of action is stated for declaratory relief. The municipal defendants contend that the court lacks jurisdiction over the subject matter. As presented, these contentions involve the same basic problem and will be considered together.

Upon this issue the allegations of the complaint reduced to their simplest terms provided in substance: That rendering plants and slaughterhouses are prohibited by a valid zoning ordinance of the town of Bellevue; that an invalid permit was issued permitting a building to be constructed for these prohibited purposes; that the defendants Elkay and Packerland, in addition to the new structure, have altered the original structure and are using it for prohibited purposes; that the plaintiffs, Boerschingers, are adjacent property holders and near-neighbors and that the construction and use of the building as proposed would damage them specially because of obnoxious sights, odors, sounds, traffic, attraction of insects and flies, and depreciate their property.

In *Sohns v. Jensen* (1960), 11 Wis. (2d) 449, 459–462, 105 N. W. (2d) 818, in considering an injunctional relief to prohibit the operation of an automobile-wrecking yard prohibited by a zoning ordinance, we stated:

"The last question raised by the defendant is whether the operation of the automobile-wrecking yard constituted a private nuisance. The gist of the complaint was that the defendant's operation in burning the junked vehicles caused such serious, material, and permanent injury to the plaintiffs by reason of the smoke, smells, and stench, as to con-

---

[1] See also *Whaling v. Stone Construction Co.* (1958), 5 Wis. (2d) 113, 92 N. W. (2d) 278; *Cohn v. Zippel* (1961), 12 Wis. (2d) 258, 107 N. W. (2d) 184; and *Rogers v. Oconomowoc* (1962), 16 Wis. (2d) 621, 625, 115 N. W. (2d) 635.

stitute a nuisance. The injunction on this ground enjoined only the burning of automobiles at any time on the defendant's premises, but not the rest of the defendant's business, as the defendant argues. The injunction based on the violations of the zoning ordinance enjoined the defendant from conducting an automobile-wrecking yard, and included the burning of vehicles as a part of that use of the premises. There was no pleading or issue that the entire wrecking-yard operation constituted a nuisance. Sec. 280.01, Stats., provides for an action to abate a private nuisance. The trial court granted an injunction on the authority of *Pennoyer v. Allen* (1883), 56 Wis. 502, 14 N. W. 609, which we agree rules this case. The plaintiffs' cause of action for nuisance is basically an action in equity for abatement. *Kamke v. Clark* (1955), 268 Wis. 465, 67 N. W. (2d) 841, 68 N. W. (2d) 727. During the years 1956–1958, the defendant's operation in burning automobiles created extremely black, dense smoke containing soot to a large degree, as well as smells predominately of burning rubber, oil, and grease. Some plaintiffs live adjoining the defendant's property and other plaintiffs live nearby; one has a residence, a tavern, and picnic ground; another has a residence and greenhouse; another has only a residence. On occasion smoke penetrated the plaintiffs' residences and left quantities of soot on furniture and walls. The smell was offensive and noxious. Even though a business may be lawful, nevertheless it may be conducted in such a way as to amount to a nuisance either because of its location, as in *Hasslinger v. Hartland* (1940), 234 Wis. 201, 290 N. W. 647, or because of the effect of the operation.

"While *Pennoyer v. Allen, supra,* is the leading case on what amounts to a nuisance, this court has passed upon the question many times since. In *McCann v. Strang* (1897), 97 Wis. 551, 72 N. W. 1117, this court stated that a lawful trade carried on in close proximity to a dwelling house could constitute a nuisance and that the test was whether the particular trade was of such a character as would be likely to be physically annoying to a person of ordinary sensibilities. The distinction between nuisances *per se* and other nuisances was pointed out in *Rogers v. John Week Lumber Co.* (1903), 117 Wis. 5, 93 N. W. 821. See *Holman v. Mineral Point Zinc Co.* (1908), 135 Wis. 132, 115 N. W.

327 (sulphuric-acid plant in close proximity to plaintiff's property) ; *Anstee v. Monroe Light & Fuel Co.* (1920), 171 Wis. 291, 177 N. W. 26 (gas plant from which smoke was so thick and odor so bad as to affect the comfort, if not the health, of the plaintiff). In *Dolata v. Berthelet Fuel & Supply Co.* (1949), 254 Wis. 194, 36 N. W. (2d) 97, this court held that a business which necessarily impregnates the atmosphere with disagreeable, unwholesome, or offensive matter may become a nuisance to those occupying adjacent property when such property owners are substantially impaired in the comfort and enjoyment of their premises. Smoke is not a nuisance *per se,* but smoke and soot and offensive odors may constitute a nuisance in fact when they interfere with the use and enjoyment by persons of ordinary sensibilities of their property.

"The defendant contends the injunction should only enjoin him from operating the automobile-wrecking yard in such a manner that the burning operations would not constitute a nuisance to the public. The difficulty with this argument is that the burning of automobiles is not a permitted use under the ordinance. Furthermore, the defendant did not show that such burning of automobiles can be done without serious injury to these plaintiffs' use of their property. Although the defendant has not burned automobiles since 1958, there is no evidence that he has permanently ceased burning automobiles. The evidence indicates that he would continue to do so if not enjoined. We believe the trial court correct in granting the injunction enjoining the defendant from burning automobiles because it constituted a private nuisance. An injunction looks to the future and it is the proper remedy to abate the contemplated acts when in the past similar acts have caused sufficient harm to the plaintiffs to constitute a nuisance."

We conclude the allegations of the complaint are sufficient to state a cause of action based upon a private nuisance.

Sec. 62.23 (7) (f) 2, Stats., provides:

"In case any building or structure is or is proposed to be erected, . . . or any building, structure or land is or is proposed to be used in violation of this section or of any ordinance or other regulation made under authority con-

ferred hereby, the proper authorities of the city, or any adjacent or neighboring property owner who would be specially damaged by such violation may, in addition to other remedies, institute appropriate action or proceedings to prevent such unlawful erection; . . . to restrain, correct, or abate such violation; to prevent the occupancy of said building, structure or land; or to prevent any illegal act, conduct, business or use in or about such premises."

Sec. 66.052, Stats., provides as follows:

". . . Any such business conducted in violation of any city, village or town ordinance permitted to be enacted under the provisions of this section is declared to be a public nuisance. . . ."

The fact that a nuisance may be declared by statute to be a public nuisance so as to entitle a municipality to bring action to enforce does not make it exclusively so. There may be special damage in connection with the violation of the zoning ordinance so as to constitute a private nuisance.

In keeping with the purpose of the Declaratory Judgments Act to provide a tribunal where legal and equitable uncertainties can be resolved expeditiously and without multiplicity of suits with attendant delay and expense, as stated above, we conclude that a cause of action has been stated, that all parties named in the complaint are necessary or proper parties, that the ancillary or auxiliary issues that may exist can be litigated in the action, and that supplementary relief in the form of injunction can be decreed if warranted.

We feel that answers should be made and filed, the issues determined, and the trial conducted as soon as reasonably possible.

Declaratory judgment is well suited for this purpose.[2] It is apparent from the record, especially the affidavits filed in support and in opposition to the temporary injunction,

---

[2] A scholarly comment on our Declaratory Judgments Act by Stanley F. Hack appears in the 1961 Wisconsin Law Review, 467.

that strong and bitter feelings have to some degree motivated the actions of parties on both sides. The rights of the parties should be determined and this dispute should end as soon as possible. The remedial and procedural legal vehicle best suited for this purpose is an action for declaratory judgment under the facts alleged in the complaint.

Both demurrers should be overruled and all defendants who have appeared should be given opportunity to answer.

The defendants urge that the plaintiffs, Boerschingers, have fatally failed to allege that they are property owners as required by statute. The allegation is that they are property holders. The plaintiffs respond that it is more accurate to state you hold real estate and own personal property. The ancient legal connotation of ownership in the word "hold" or "held" is sufficient to withstand a challenge by demurrer.[3] A more-specific description of the Boerschingers' interest in property can be obtained by motion to make more definite and certain if desirable.

The plaintiffs have appealed the trial court's order dissolving the temporary injunction which restrained the corporate defendants from proceeding with the proposed building.

The trial court's memorandum opinion supporting the order dissolving the temporary injunction states in part as follows:

"It appears to the court that the plaintiffs' claim that there is an immediate irreparable injury resulting from the defendants' erection of the building in question cannot be sustained. In the final analysis, it is the operation of the proposed rendering tank that is sought to be prevented, and not the construction of the building itself.

"The ordinance as amended of the Town of Bellevue is presumed to be valid unless declared otherwise. A building permit was issued for the erection of this building on that basis. It is elementary that a temporary injunction should

---

[3] See Black's Law Dictionary (4th ed.), p. 864.

not be granted unless the plaintiffs' right to an injunction is quite clear. There are demurrers pending in this case which seek to determine whether the plaintiffs have stated causes of action, and if so, whether the actions are properly brought. The sufficiency of the complaint and the reasonable probability of success must be tested before a temporary injunction can be granted.

"In *Vredenburg v. Safety Devices Corp.*, 270 Wis. 36, the court said:

" 'When we take up the appeal from the part of the order which grants the temporary injunction, the sufficiency of the complaint immediately becomes material, for if it appears there that the plaintiff is not entitled to the permanent injunction which his complaint demands, the court ought not to give him the same relief temporarily.'

"It is, therefore, proper to assess the complaint and the legal defenses asserted by the defendants in their demurrers in opposition to the plaintiffs' complaint. The Supreme Court in the case of *Culligan v. Rheume*, 269 Wis. 242, at page 250, stated as follows:

" 'We consider that generally it is the better practice, when legal or equitable defenses are raised, which appear meritorious to the trial court, to deny the application for the temporary injunction until such issues can be disposed of.'

"I can state emphatically that at the present state of the proceedings I cannot conclude that there is reasonable probability that the plaintiffs will prevail on their complaint. . . ."

Granting a temporary injunction is within the sound discretion of the court. *Shearer v. Congdon* (1964), 25 Wis. (2d) 663, 131 N. W. (2d) 377; *Codept, Inc., v. More-Way North Corp.* (1964), 23 Wis. (2d) 165, 127 N. W. (2d) 29. In *Shearer*, we said (p. 666):

"The test is not whether this court would have granted the injunction in the first place, but whether there was an abuse of discretion on the part of the trial court."

We find no abuse of discretion upon the part of the trial court. The order must be affirmed.

*By the Court.*—The order sustaining the demurrer interposed by the defendants Ted J. Denissen, Ronald Tordeur, Clarence Vanden Heuvel, and town of Bellevue is reversed.

The order overruling the demurrer interposed by the defendants Elkay Enterprises, Inc., Packerland Packing Company, Inc., and Frank O. Zeise Construction Co., Inc., is affirmed.

All defendants who have appeared in the action shall have twenty days following the return of the record to the clerk of the circuit court for Brown county to serve and file answers to the complaint.

The order dissolving the temporary injunction is affirmed.

No appeal costs to be taxed.

The following opinion was filed March 2, 1965.

PER CURIAM (*on motion for rehearing*). One new point has been raised by appellants-defendants in their brief on rehearing which we deem merits consideration. This is the contention that the town zoning ordinance enacted March 28, 1962, is void on the ground that the legislature has prohibited the restriction therein imposed upon use of property for a rendering plant. In appellants' original brief they took the position that it was unnecessary to consider the validity of this ordinance because it was claimed only the town and not private individuals could maintain an action to enforce the ordinance.

Appellants' contention that the ordinance is void is grounded upon secs. 66.052 and 95.72, Stats.

Sec. 66.052, Stats., provides in part as follows:

"Any city council or village board may direct the location, management and construction of, and license (annually or otherwise), regulate or prohibit any industry, thing or place

where any nauseous, offensive or unwholesome business may be carried on, within the city or village or within 4 miles of the boundaries, . . . Any town board as to the area within the town not now or hereafter licensed, regulated or prohibited by any city or village pursuant to the provisions of this section, shall have the same powers as provided in this section for cities and villages. . . . The provisions of s. 95.72 shall not be construed as any limitation upon the powers granted by this section to cities or villages *but powers granted to towns by this section shall be limited by the provisions of s. 95.72 and any orders, rules and regulations promulgated thereunder."* (Italics supplied.)

Sec. 95.72, Stats., provides for the licensing of rendering plants by the state department of agriculture and imposes certain requirements and restrictions with respect to their location and operation.

The court has encountered some difficulty in construing the provision in sec. 66.052, Stats., that sec. 95.72 is not to be construed as any limitation on the power of cities or villages under sec. 66.052 but that the power granted to towns thereunder is limited by the provisions of sec. 95.72 and any orders, rules and regulations promulgated thereunder. It is clear that the legislature intended to confer some power upon towns to regulate rendering plants in addition to the regulations imposed by sec. 95.72, but that such power is more restricted than that of cities and villages. The interpretation that seems most reasonable is that cities, villages, and towns may impose stricter regulation of rendering plants than imposed by sec. 95.72, but, although cities and villages may prohibit rendering plants entirely within their limits, towns cannot do so.[1] We adopt such construction.

---

[1] In *Park Bldg. Corp. v. Industrial Comm.* (1960), 9 Wis. (2d) 78, 91, 100 N. W. (2d) 571, we held there was no conflict between certain safety orders of the industrial commission and building code ordinance of the city of Milwaukee because it was possible for the property owner to comply with both.

The entire town zoning ordinance of March 28, 1962, is not before us but only the following portions thereof set forth in the complaint:

*"Section VIII Industrial District*
"Use. In the Industrial District buildings and land may be used for any purpose except the following:
"
". . .
"2. Uses contrary to laws of the State of Wisconsin or ordinances adopted by the County Board of Brown County or the Town Board of the Town of Bellevue, Brown County, Wisconsin.
"3. Any of the following uses unless the location thereof shall have been approved in writing by the board of appeals, following a public hearing, and such approval shall be consistent with the general purpose and intent of this ordinance and shall be based upon such evidence as may be presented at such public hearing, tending to show the desirability or undesirability of specific proposed locations for a specific proposed use from the standpoint of the public interest, because of such factors as (without limitation because of enumeration) smoke, dust, noxious or toxic gases and odors, noise, glare, vibration, heavy vehicular traffic and increased traffic on the public streets; . . .
"(e) Bone distillation, fat rendering or any other form of dead animal reduction. . . .
"(k) Slaughterhouse, stockyard, meat processing. . . ."

Prior to adopting this ordinance the town had voted itself village powers by adoption of a resolution to that effect as authorized by sec. 60.18 (12), Stats. The zoning ordinance of March 28, 1962, does not purport to have been grounded on sec. 66.052, but upon sec. 62.23. Sec. 61.35 expressly makes the provisions of sec. 62.23 applicable to villages. Nevertheless we determine sec. 66.052 is controlling to the extent that a town having village powers cannot wholly exclude a rendering plant from its entire area. However, the above-quoted provisions of the ordinance of March 28, 1962, do not purport to do this. Instead it requires written approval by the board of zoning appeals of any application for

use of property in an industrial district as a rendering plant, and sets forth specific standards to be followed by the board in passing on such an application.

We conclude that the ordinance does not violate sec. 66.052, Stats., nor is it in conflict with sec. 95.72.

The motion for rehearing is denied without costs.